IN RE DISCIPLINARY PROCEDURES OF ALFRED P. PHILLIPS, CHIEF OF POLICE, RARITAN TOWNSHIP, HUNTERDON COUNTY, NEW JERSEY.

Argued October 10, 1989—Decided February 6, 1990.

*Douglas S. Brierley* argued the cause for appellant Township of Raritan (*Schenck, Price, Smith & King*, attorneys; *Joseph S. Novak* and *Anita B. Kartalopoulos*, of counsel; *Douglas S. Brierley* and *John M. DeMarco*, on the briefs).

*Robert J. Durst, II*, argued the cause for respondent Alfred R. Phillips (*Bernhard, Durst & Dilts*, attorneys; *Christina Oldenburg Hall*, on the brief).

The opinion of the Court was delivered by

GARIBALDI, J.

## I

This appeal involves disciplinary charges brought by the Township of Raritan against its Chief of Police, Alfred P. Phillips. The charges stem from Phillips' involvement in a 1985 automobile accident in which the Township alleges that he was driving while under the influence of alcohol. As a result of that incident, the Township Committee found Phillips guilty of three disciplinary infractions and demoted him in rank from Chief of Police to patrolman.

While Phillips' appeal of the Township Committee's disciplinary action was pending, the municipal court acquitted him of the statutory offense of driving while intoxicated, *N.J.S.A.*

39:4–50 (DWI). Subsequently, the law division, in a trial *de novo,* vacated the Township Committee's findings on two of the three disciplinary infractions but affirmed Phillips' conviction of violating police department regulations because of his intoxication.

On appeal, the Appellate Division dismissed all charges against Phillips, reasoning that the departmental rule prohibitions against intoxication were inseparably linked to the statutory drunk-driving charge. The primary issue before us is whether an administrative finding that a defendant has not violated *N.J.S.A.* 39:4–50 precludes a finding of intoxication in violation of police department rules in the same administrative proceeding. We also consider the scope of a trial court's review of disciplinary convictions pursuant to *N.J.S.A.* 40A:14–150.

## II

On December 10, 1985, Phillips took a personal day and travelled to Pennsylvania in an unmarked police car owned by the Township. Returning to Raritan that afternoon, he drove to an inn in Ringoes at approximately 5:30 p.m. A bartender testified that he had served Phillips three drinks, each containing one and one-half ounces of eighty proof vodka. Phillips consumed two drinks within fifteen minutes and then lingered over the third until approximately 7:00 p.m. He did not eat. The bartender testified that Phillips was not under the influence of alcohol when he left the premises.

Phillips' accident occurred at approximately 7:15 p.m. on County Route 579 when he swerved to avoid a deer in the roadway and struck it with the vehicle's right bumper. He traveled 125 feet off the roadway and demolished a cement mailbox pillar before coming to a sudden stop. Phillips suffered serious injuries including a contusion of the heart, a fractured rib, and a severe gash across the forehead.

A passerby found Phillips unconscious in his car and immediately called for assistance. Two fellow officers arrived shortly

thereafter. They did not administer a breathalyzer test. Rescue workers later arrived and transported Phillips to Hunterdon Medical Center. The police officer and the rescue workers testified that they had not smelled alcohol on Phillips' breath.

When he arrived at the hospital, Phillips "jumped" from the stretcher, walked into the emergency room, and announced that he wished to go home. He was eventually treated by two doctors and a nurse on duty, all of whom testified that they had smelled alcohol on Phillips' breath. Concerned about the effect of Phillips' concussion combined with the alcohol in his bloodstream, the doctors requested a blood sample. Phillips refused. He later admitted that he had refused the test because he had been drinking. A blood sample was not extracted until 11:30 p.m.

The sample was tested on a Cobas bio computer. The alcohol concentration was the equivalent of .129–.131, which was later extrapolated to show a .17–.19 concentration at the time of the accident. Four months later, the state police tested that blood sample using a gas-chromotography test. That test revealed no detectable level of alcohol in Phillips' blood.

On learning of the incident, the Township's mayor asked the Hunterdon County Prosecutor's Office to assist in an investigation. In January 1986, the Township issued a summons charging Phillips with driving while intoxicated, in violation of *N.J. S.A.* 39:4–50. At that time, Phillips requested a thirty-day sick leave to undergo alcohol-rehabilitation treatment.

After considering the D.W.I. charge, the Township Committee determined that Phillips should be suspended. In February 1986 the Township Committee met again and decided to file a four-count complaint against Phillips. The complaint charged Phillips with: (1) operating a vehicle under the influence of alcohol, in violation of *N.J.S.A.* 39:4–50; (2) using a Township vehicle in violation of established Township policy; (3) as a result of his intoxication, violating the rules and regulations of the police department by engaging in conduct contrary to "good

order and discipline" that reflected "unfavorably on the courage and resourcefulness" of the department; and (4) as a result of his intoxication, violating the rules and regulations of the police department by being under the influence of an "alcoholic liquor."

At the Township Committee hearings, Phillips presented testimony challenging the blood test performed at the Hospital. Based on his weight, the amount of alcohol he had consumed, and the time span of that consumption, Phillips' first expert claimed that Phillips' blood-alcohol level could not have exceeded .03–.04 at the time of the accident. The expert offered further testimony on the circulating level of alcohol that an alcoholic must maintain in order to avoid withdrawal symptoms. Significantly, the expert explained that the average residual blood alcohol concentration in alcoholics ranges from .06 to .08, and higher. He estimated that if a person had a preexisting level of alcohol in his bloodstream and then drank three-and-one-half ounces of vodka in one-and-one-half hours, his blood alcohol level would rise to a much higher level. Apparently, his testimony was offered to show that such residual alcohol in Phillips would account for the higher blood-alcohol concentration at the time of the accident.

Phillips testified and admitted that he was an alcoholic. According to his testimony, he normally had three drinks in the evening at a local bar and then drank at home until the early morning hours. He testified that he had been drinking on the evening preceding the accident, explaining the residual alcohol in his bloodstream on the following day. He further admitted that he had received warnings from the Township for engaging in alcohol-related misconduct while on duty. He also testified that while driving the Township car on December 10th, he was armed, attentive to his police radio, and ready to respond to any emergencies that might have arisen.

A second expert challenged the accuracy of the Hospital's testing equipment and the competency of the lab technician

who had performed the test. Specifically, the expert testified that the Hospital did not properly maintain the Cobas bio computer. Moreover, the expert explained that the results of the gas-chromatography test conducted by the State Police, which revealed no detectable level of alcohol, were reliable.

The Township presented an expert who testified that the Cobas bio machine was as accurate as the gas-chromatography test used by the State Police. The expert explained that improper maintenance would not significantly alter the readings of the Cobas bio machine. He also suggested that the unpreserved sample used by the State Police produced an unreliable result.

In July 1986 the Township Committee found defendant guilty by a preponderance of the evidence of three charges but dismissed the count relating to unofficial use of a municipal vehicle. Specifically, the Committee determined that when the accident occurred, Phillips had been under the influence of alcohol, in violation of police department regulations and state statute. The Committee expressly adopted the results of the blood test performed at the hospital, which indicated that Phillips had a blood-alcohol reading of .19 at the time of his accident. In the penalty phase of the hearing, the members voted to demote Phillips from Chief of Police to patrolman. The Committee also reserved the right to take further action if the municipal court found defendant guilty of driving while intoxicated. The Committee spokesperson specifically noted that "the standards as established on that [DWI] violation are not the standards or the level of intoxication" and stated otherwise, "[t]his Committee has not been obligated by state statute to make a determination that the Chief had a .1 reading."

Pursuant to *N.J.S.A.* 40A:14–150, Phillips appealed the Township's determination. In the interim the municipal court acquitted Phillips of the DWI charge.

On appeal of the disciplinary action, the law division conducted a *de novo* review of the Township's decision on the record established below. The law division found Phillips only guilty of count three of the disciplinary complaint. The court held that as a result of his intoxication, Phillips had violated departmental regulations by acting contrary to good order and discipline, which conduct reflected unfavorably on the courage and resourcefulness of the Department. Given the conflicting lab results from the hospital and the State Police, however, the court did not find by a preponderance of evidence that Phillips was guilty of count one, driving under the influence of alcohol, in violation of *N.J.S.A.* 39:4–50. The court also found Phillips not guilty of violating the department regulations concerning driving under the influence because Phillips had not been "on duty" at the time of the incident. It reasoned that "[t]o find otherwise would be a great intrusion into the private lives of those in positions of authority in small public service departments." The law division also ruled that the penalty demoting Phillips from Chief of Police to patrolman was appropriate.

The Appellate Division reversed the law division with respect to count three and thus dismissed all the charges against Phillips. In so doing, the court explained that the law division had treated charge three as "broader and more inclusive" than the statutory DWI offense. Finding "no difference" between the two charges, the Appellate Division reasoned that because the first charge had not been proven, the third charge must similarly fail. This Court granted certification. 113 *N.J.* 650 (1988). We first consider whether a police department regulation can be construed more broadly than the statutory DWI offense, *N.J.S.A.* 39:4–50.

## III

■ Before reaching the narrow issue before us, we must consider the distinctions between disciplinary hearings and quasi-criminal or criminal trials. The quantum of proof required to

find a disciplinary infraction is different from that necessary for a criminal conviction. In the former, it is necessary to establish the truth of the charges only by a preponderance of the evidence, *Atkinson v. Parsekian,* 37 *N.J.* 143, 149 (1962), while in a quasi-criminal or criminal proceeding, the proofs must establish guilt beyond a reasonable doubt. *State v. DiCarlo,* 67 *N.J.* 321, 327 (1975); *State v. Walker,* 33 *N.J.* 580, 594 (1960); *see In re Darcy,* 114 *N.J.Super.* 454, 458 (App.Div. 1971). Related to those standards is the well-settled rule that a final judgment of conviction is essential to a finding of guilt based on a departmental disciplinary charge of having violated the criminal law. *Sabia v. City of Elizabeth,* 132 *N.J.Super.* 6, 12 (App.Div.1975). The converse of that rule, however, does not apply. In *Sabia* the court also explained that "[w]here the conduct of a public employee which forms the basis of disciplinary proceedings may also constitute a violation of the criminal law, [ ] the absence of a conviction, whether by reason of nonprosecution or even acquittal, bars neither prosecution nor finding of guilt for misconduct in office in the disciplinary proceedings." *Id.* at 12.

With those principles in mind, we examine the charges brought against Phillips. The four counts enumerated in the Township's complaint included a violation of *N.J.S.A.* 39:4–50, and violations of the regulations of the Raritan Police Department. Those rule violations though levelled "as a result of the intoxication of Phillips," were not specifically linked to the statutory offense. Indeed, in ruling that Phillips had violated the police-department rules, the Township Committee noted that it was not obligated by state statute to make a determination that the Chief had had a .10 reading. Thus, the Township's separate standards guided the determination of whether Phillips violated the statute or the police department rules and regulations.

As a threshold issue, we note that Phillips' subsequent acquittal of DWI in municipal court did not bar a finding of

guilt in the disciplinary proceeding for the same charge, even though both proceedings focused on the statutory offense. *Sabia v. City of Elizabeth, supra,* 132 *N.J.Super.* at 12. Each tribunal arrived at its decision using a different burden of proof. See *Atkinson v. Parsekian, supra,* 37 *N.J.* at 149; *State v. DiCarlo, supra,* 67 *N.J.* at 327. Employing that same reasoning, we hold that the trial court's *de novo* finding that Phillips did not violate *N.J.S.A.* 39:4–50 did not preclude a finding of intoxication in violation of police department regulations. The charges required different elements of proof. A finding of intoxication, in violation of police department rules and regulations, can be premised on less-stringent criteria than necessary to establish a statutory violation. Indeed, Phillips' conduct on the night of December 10, 1986, which admittedly included drinking and driving while armed with a deadly weapon, was sufficient to violate police-department regulations that prohibit conduct "contrary to good order and discipline" and reflecting unfavorably on the courage and resourcefulness of the department.

It has been held that a finding of misconduct by a police official need not be predicated on the violation of any particular department rule or regulation. *In re Emmons,* 63 *N.J.Super.* 136, 140 (App.Div.1960). Viewed in this context, the four regulations cited in counts three and four reflect an "implicit standard of good behavior which devolves upon one who stands in the public eye as the upholder of that which is morally and legally correct." *Id. See Asbury Park v. Department of Civil Serv.,* 17 *N.J.* 419, 429 (1955); *In re Tuch,* 159 *N.J.Super.* 219, 224 (App.Div.1978).

The obligation to act in a responsible manner is especially compelling in a case involving a law enforcement official:

> [A] police officer is a special kind of public employee. His primary duty is to enforce and uphold the law. He carries a service revolver on his person and is constantly called upon to exercise tact, restraint and good judgment in his relationship with the public. He represents law and order to the citizenry and must present an image of personal integrity and dependability in order to have the respect of the public, particularly in a small community.... [*Township of*

*Moorestown v. Armstrong*, 89 *N.J.Super.* 560, 566 (App.Div.1965), *certif. denied*, 47 *N.J.* 80 (1966).]

Nor can a police officer complain that he or she is being held to an unfairly high standard of conduct. Rather, "it is one of the obligations he undertakes upon voluntary entry into the public service." *In re Emmons, supra,* 63 *N.J.Super.* at 142.

█  Thus, even without considering the specifics of the disciplinary charges, we find that the evidence was sufficient to support the trial court's finding that Phillips deviated from the high standard of care imposed on police officers and implicit in all departmental regulations by his actions on December 10, 1985. He failed to exercise the good judgment required of an armed police officer, admittedly obligated to respond to emergencies, by drinking and driving and thus impairing his ability to uphold the law. That he did so while off-duty does not mitigate his actions.

## IV

With that in mind, we turn next to the scope of review of each tribunal considering the disciplinary charges brought against Phillips. *N.J.S.A.* 40A:14–150 governs reviews of disciplinary convictions in non-civil service municipalities. Specifically, the statute provides that any "member or officer of a police department ... who has been ... convicted upon any charge ... may obtain a review [ ] by the Superior Court." The statute also states that the court shall hear the cause *de novo* on the record below, and may reverse, affirm or modify any such conviction.

The predecessor to *N.J.S.A.* 40A:14–150, *L.* 1935, *c.* 29, enacted in 1935, originally authorized a trial *de novo* in such disciplinary actions. The sponsor of that statute explained the rationale underlying the requirement:

The object of this act is to provide redress for members of the police department who are discharged for political reasons. In some of the smaller municipalities of the State, the officer or board who tries members of the police department for infraction of the rules are often the very men who make the

charges against them and are prejudiced. The officer does not get a fair trial, and there is no redress. At present, a certiorari may be taken if allowed, to the Supreme Court, but the Supreme Court will not review the evidence in the case except to find if there is the slightest evidence against the accused, then in that event the Supreme Court will not interfere with the case notwithstanding that the great preponderance of evidence may be in his favor. Under the present bill this injustice will be done away with and policemen will have the right in case he feels that he is dealt with by a prejudiced official to have a new trial before an impartial judge.

This act does not apply where the Civil Service act has been adopted.

*Grasso v. Borough Council of Glassboro*, 205 *N.J.Super.* 18, 24 (App.Div.1985), *certif. denied* 103 *N.J.* 453 (1986); *In re Bruni*, 166 *N.J.Super.* 284, 289 (App.Div.1979).

In 1981, the Legislature amended the statute to provide for a *de novo* proceeding *"on the record below,"* and to further allow "[e]ither party [to] supplement the record with additional testimony subject to the rules of evidence." *L.* 1981, *c.* 75, § 6 (emphasis added). The 1981 amendments were enacted to "provide[d] greater uniformity in the procedures governing the discharge of county and municipal employees not protected by Civil Service," and to establish a "procedure ... similar to that governing Civil Service municipal and county employees." *Grasso v. Borough Council of Glassboro, supra,* 205 *N.J.Super.* at 25 (quoting Governor Byrne's Message, S–1412) (court's emphasis omitted). Thus, although the 1981 amendments changed the nature of the proceedings, the review conducted by the law division nonetheless remains *de novo.* In this regard, the purpose of the statute as originally enacted remained intact after amendment: to provide employees of non-civil service communities with an independent tribunal to review their disciplinary actions. *In re Bruni, supra,* 166 *N.J.Super.* at 289.

A *de novo* hearing provides a reviewing court with the opportunity to consider the matter "anew, afresh [and] for a second time." *Romanowski v. Brick Township,* 185 *N.J.Super.* 197, 204 (Law Div.1982), *aff'd o.b.,* 192 *N.J.Super.* 79 (App.Div.1983). In a *de novo* proceeding, a reviewing court does not use an "abuse of discretion" standard, but makes its own findings of fact. *Romanowski v. Brick Township, supra,*

185 *N.J.Super.* at 204; *see Henry v. Rahway State Prison,* 81 *N.J.* 571, 579 (1980). Conducting the review *on the record* and without the benefit of live testimony does not alter the standard. Rather, it is wholly consistent with the broad grant of power conferred upon the reviewing court to reverse, affirm or modify the disciplinary conviction. *Evesham Township Board of Adjustment v. Evesham Township Council,* 86 *N.J.* 295, 300 (1981) (*de novo* review on the record of board of adjustment decision is not bound by "abuse of discretion" test).

An appellate court plays a limited role in reviewing the *de novo* proceeding. In *State v. Johnson,* 42 *N.J.* 146 (1964), we explained that the court's "function on appeal is not to make new factual findings but simply to decide whether there was adequate evidence before the [ ] Court to justify its finding of guilt." *Id.* at 161 (quoting *State v. Dantonio,* 18 *N.J.* 570, 575 (1955)). Thus, unless the appellate tribunal finds that the decision below was "arbitrary, capricious or unreasonable" or "[un]supported by substantial credible evidence in the record as a whole," the *de novo* findings should not be disturbed. *See Henry v. Rahway State Prison, supra,* 81 *N.J.* at 580, *Campbell v. Department of Civil Serv.,* 39 *N.J.* 556, 562 (1963).

While the Township concedes that a court conducting a *de novo* review is not bound by an abuse of discretion standard, it nonetheless urges that such a court should give considerable weight to the findings in the original proceedings, since the previous tribunal had the benefit of hearing live testimony and assessing the credibility of the witnesses. Thus, in the present case, it argues that the Law Division erred by ignoring the findings of the Township Committee regarding the validity of the blood tests conducted at the hospital because the Committee had the opportunity to observe the experts first-hand and assess their credibility. We disagree.

Although a court conducting a *de novo* review must give due deference to the conclusions drawn by the original tribunal regarding credibility, those initial findings are not controlling.

*State v. Johnson, supra,* 42 *N.J.* at 157. On reviewing the record *de novo,* the court must only make reasonable conclusions based on a thorough review of the record. That process might include rejecting the findings of the original tribunal, which are necessarily based on an assessment of the demeanor and credibility of witnesses. To require a reviewing court to defer to the original findings would conflict with the fundamental purpose of a *de novo* proceeding under *N.J.S.A.* 40A:14–150: to ensure that a neutral, unbiased forum will review disciplinary convictions.

In conducting its *de novo* review of Phillips' conviction, the trial court made reasonable findings of fact. With respect to Count One, the court found that a preponderance of the evidence did not indicate that Phillips had violated *N.J.S.A.* 39:4–50. In making its determination, the court noted the inconsistency between the hospital and the State Police laboratory results. Additionally, in light of the equipment and procedures used by the hospital, the court found the results too unreliable to establish the statutory violation. Although the court found that the evidence was insufficient to establish a violation of *N.J.S.A.* 39:4–50, it nonetheless found that as a result of his intoxication, Phillips acted contrary to good order and discipline, in violation of the Raritan Police Department rules. Considering Phillips' conduct on the night of December 10, 1985, which included drinking and driving while armed, the evidence amply supports that finding. With respect to Count Four, the court could reasonably find that Phillips was not on duty at the time of the accident, and therefore not in violation of departmental regulations by being under the influence of alcohol. His status as police chief, implying a constant obligation to be on call, was insufficient to establish that he was "on duty" within the meaning of the police department regulation at the time of his accident.

Additionally, the trial court considered appropriate factors, reasonably drawn from the record, in imposing the

disciplinary penalty on Phillips. Although we recognize that a tribunal may not consider an employee's past record to prove a present charge, *West New York v. Bock*, 38 *N.J.* 500, 523 (1962), that past record may be considered when determining the appropriate penalty for the current offense. *In re Wenderwicz*, 195 *N.J.Super.* 126, 131–32 (App.Div.1984). The court noted that Phillips admitted having a history of alcohol-abuse, and that the Township Committee had approached him on several occasions about his drinking problem. Based on those factors, as well as his conduct on December 10, 1985, the trial court reasonably determinated that demotion was the appropriate punishment.

In reviewing the *de novo* proceedings, the Appellate Division reversed the trial court with respect to count three. The court explained that *N.J.S.A.* 39:4–50 had been the focus of all charges in the complaint. Because the lower court had acquitted Phillips of Count One which specifically referred to *N.J.S.A.* 39:4–50, the Appellate Division reasoned that count three, which charged Phillips with intoxication in violation of departmental rules, must necessarily fail.

We disagree. The charges brought against Phillips were not based solely on the statutory DWI offense, but rather included police-department-rule violations, which dictate standards of conduct and require a burden of proof wholly separate from *N.J.S.A.* 39:4–50. See *supra* at 575–76. The findings of the law division were not inconsistent, or arbitrary, but were supported by substantial, credible evidence. The Appellate Division therefore erred by disturbing the findings of the law division.

The decision of the Appellate Division is reversed in part and affirmed in part.

*For affirmance in part and reversal in part*—Chief Justice WILENTZ and Justices HANDLER, O'HERN, and STEIN—5.

582

*Opposed*—None.

Justices CLIFFORD and POLLOCK did not participate.