**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1726-15T4

IN THE MATTER OF
GIOVANI COLON,
DEPARTMENT OF CORRECTIONS.

_____

Argued May 18, 2017 — Decided July 14, 2017

Before Judges Hoffman and Whipple.

On appeal from Civil Service Commission, Docket No. 2016-1452.

Colin M. Lynch argued the cause for appellant Giovani Colon (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Mr. Lynch, of counsel and on the briefs; Kaitlyn E. Dunphy, on the brief).

Peter H. Jenkins, Deputy Attorney General argued the cause for respondent Department of Corrections (Christopher S. Porrino, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Mr. Jenkins, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner, Giovani Colon, appeals from a September 3, 2015 final administrative action from the Civil Service Commission (Commission) and a December 17, 2015, denial of reconsideration of a Department of Correction (DOC) disciplinary action against petitioner removing him from his position for using excessive force against an inmate. We affirm.

Petitioner worked for the DOC as a senior corrections officer at Edna Mahan Correctional Facility for Women. This case stems from a January 26, 2015 incident between petitioner and an inmate, C.B.[1] C.B. is a special needs inmate receiving psychiatric care. C.B. approached the control booth next to the day room where petitioner was working and asked for pictures to be returned to her. C.B. had recently been released from detention and was told by another inmate petitioner had collected her belongings. Petitioner told C.B. he did not have her pictures, the day room was closed, and C.B. must return to her housing unit. C.B. left but returned and wanted to look in the office herself for the pictures. Petitioner again directed C.B. to return to her housing unit. C.B. began to leave but stopped and said something over her shoulder. According to petitioner, C.B. threatened that "she was not going down to her wing until she punched [him] in the face."

---

[1] We use initials to protect the identity of the inmate.

The interaction was captured on the correctional facility's security cameras from two angles. The video shows C.B. approaching the control booth twice; the second time when she began to walk away, she stopped and said something over her shoulder. Next, the video shows petitioner walking towards C.B., who turned and continued to walk back towards the housing unit. Petitioner closed the gap between himself and C.B., standing inches from her. From the camera's angle, C.B. appears to be clenching and unclenching her left hand. Petitioner pushed C.B. The push caused C.B. to stumble, and eventually petitioner forcefully pushed her to the floor. C.B. tried to punch petitioner, who testified he "took her down" and "only used the force necessary to control her." However, the video shows petitioner punching C.B. while she was on the floor. Petitioner testified C.B. continued to resist and was unaware of how C.B. endured a bump on her head. A "Code 33"[2] was called, bringing officers to the scene.

When a Code 33 is called, the shift commander reviews any surveillance video of the incident. Center Control Lieutenant Gerald Petti reviewed the video, observed petitioner pushing an inmate, and referred the incident to the Special Investigation Division.

---

[2] A Code 33 refers to a fight within the correction facility.

A Preliminary Notice of Disciplinary Action was served on petitioner on March 12, 2015. Following a hearing, a final notice of disciplinary action was issued, sustaining charges pursuant to N.J.A.C. 4A:2-2.3(a)(6), conduct unbecoming a public employee, and N.J.A.C. 4A:2-2.3(a)(12), other sufficient cause, which included violation of the Human Resources Bulletin 84-17 as amended for inappropriate physical contact or mistreatment of an inmate, patient, client, resident or employee. Petitioner was removed from his position, effective April 6, 2015. Petitioner requested a hearing, and the matter was transmitted to the Office of Administrative Law as a contested case and heard by an Administrative Law Judge (ALJ) on July 9, 2015.

Senior Investigator Renee Caldwell testified as to the results of her investigation into the January 26 incident. After reviewing the video, Caldwell interviewed C.B. and took a written statement. C.B. explained she approached the officer's area to ask about her pictures, and petitioner began screaming at her to go to her wing, cursing and saying he had no pictures. She described the incident, stating petitioner had followed her, shoved her, and pushed her to the floor where she hit her head. She described petitioner continuing to punch her in the head and face.

A-1726-15T4

Petitioner did not speak to Caldwell, but he provided a special custody report following the incident:

> I explained to Inmate [C.B.] that the day room was now closed and that she would have to return to the wing[.] [A]s I walked over to explain that Inmate [C.B.] stated "she was going to punch me in my face." Due to the immediate threat[,] I pushed the inmate away to create distance. At that time[,] Inmate [C.B.] tried to punch me. I then took the inmate to the ground and attempted to handcuff the inmate.

Major Allen Tompkins testified regarding the training officers receive regarding the appropriate use of force. Tompkins testified using the appropriate amount of force is particularly important in the prison setting because situations can escalate quickly, and Tompkins agreed an officer should take extra efforts to avoid antagonizing a special needs inmate.

After reviewing the evidence, the ALJ issued an initial decision dismissing the charge of conduct unbecoming but sustained the charge of other sufficient cause as a violation of DOC policies. The ALJ found petitioner shoved C.B. believing he was justified under the DOC use of force policy because C.B. was going to punch him. However, the ALJ found petitioner violated DOC policy when he chose to follow C.B. rather than notify his supervisor about a threat, and he made the situation worse by coming within inches of C.B. The ALJ concluded the penalty of

removal was excessive for petitioner's conduct and imposed a forty-day suspension.

After reviewing the record, the Commission entered a Final Administrative action on September 3, 2015, rejecting the ALJ's decision and sustaining the charges and penalty imposed by the DOC. The Commission also concluded removal was the only appropriate penalty in light of petitioner's prior disciplinary history. The Commission denied reconsideration of the Final Administrative action on December 17, 2015. This appeal followed.

On appeal, petitioner argues the ALJ and the Commission violated his procedural due process rights by sustaining charges not specified in the notices of disciplinary action. He also argues the penalty of removal was unwarranted and only progressive discipline was warranted.

Our review of agency action is limited. "An appellate court ordinarily will reverse the decision of an administrative agency only when the agency's decision is 'arbitrary, capricious or unreasonable or is not supported by substantial credible evidence in the record as a whole.'" Ramirez v. N.J. Dep't. of Corr., 382 N.J. Super. 18, 23 (App. Div. 2005) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). "An administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our

deference.'" Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997)). Therefore, "if substantial credible evidence supports an agency's conclusion, a court may not substitute its own judgment for the agency's even though the court might have reached a different result." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992) (citing Clowes v. Terminix Int'l, 109 N.J. 575, 587 (1998)). Additionally, a presumption of reasonableness attaches to the actions of administrative agencies. Newark v. Nat. Res. Council, 82 N.J. 530, 539-40 (1980).

Here, petitioner did not overcome the presumption of reasonableness. The record contains sufficient credible evidence of his use of excessive force by shoving C.B. and engaging in conduct unbecoming of an employee. The ALJ found petitioner escalated the situation unnecessarily. The Commission agreed with the ALJ's factual findings and determined petitioner's conduct was not acceptable.

Petitioner served as a corrections officer with full police power pursuant to N.J.S.A. 2A:154-4, and as such, he was held to a higher standard of conduct than other public employees and he was expected to act in a reasonable manner. See In re Phillips, 117 N.J. 567, 576 (1990); Moorestown Twp. v. Armstrong, 89 N.J.

Super. 560, 566 (App. Div. 1965). "A finding of misconduct by a police officer need not be predicated on the violation of any particular department rule or regulation." Phillips, supra, 117 N.J. at 576 (citing In re Emmons, 63 N.J. Super. 136, 140 (App. Div. 1960)).

In Emmons, we upheld suspension for "conduct unbecoming a police officer" based on an officer's refusal to cooperate in an examination to determine his sobriety following an off-duty automobile accident. Emmons, supra, 63 N.J. Super. at 142. We said, "[A] finding of misconduct . . . may be based merely upon the violation of the implicit standard of good behavior which devolves upon one who stands in the public eye as an upholder of that which is morally and legally correct." Id. at 140 (citing Asbury Park v. Dep't of Civil Serv., 17 N.J. 419, 429 (1955)). We defined conduct unbecoming an officer as "any conduct which adversely affects the morale or efficiency of the bureau [or] which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services." Ibid. (alteration in original). Here, petitioner engaged in conduct, which violated an implicit standard of good behavior, applicable to corrections officers.

Petitioner argues the Commission's decision to remove him for violating an uncharged and unwritten policy that he must keep an

arm's length away from an inmate and call a supervisor if an inmate is insubordinate is arbitrary and capricious. We disagree. The Corrections Academy training policy instructs officers to keep an arm's length between them and inmates. Moreover, petitioner was on notice the entire incident formed the basis of these charges, and thus, he was on notice of the underlying charges.

Petitioner also argues the penalty of removal is excessive. We disagree. A deferential standard applies to our review of disciplinary sanctions. See Knoble v. Waterfront Comm'n of N.Y. Harbor, 67 N.J. 427, 431-32 (1975). We alter a sanction imposed by an administrative agency only "when necessary to bring the agency's action into conformity with its delegated authority. [This court] has no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency." In re Polk, 90 N.J. 550, 578 (1982). In light of the deference owed to such determinations, when reviewing administrative sanctions, "the test . . . is whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Ibid. "The threshold of 'shocking' the court's sense of fairness is a difficult one, not met whenever the court would have reached a different result." In re Herrmann, 192 N.J. 19, 28-29, (2007). Moreover, in Phillips, our Supreme Court recognized a tribunal may

consider an employee's past record "when determining the appropriate penalty for the current offense." Phillips, supra, 117 N.J. at 581.

The Commission considered petitioner's conduct egregious because he did not exercise the required restraint and escalated the incident unnecessarily. The Commission rejected progressive discipline considering petitioner's egregious conduct and his prior disciplinary record. Under our standard of review, we see no basis to interfere with that determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION