**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2346-18T3

IN THE MATTER OF ASIA
ATKINS, DEPARTMENT
OF CORRECTIONS.

_____

Argued telephonically March 30, 2020 –
Decided April 29, 2020

Before Judges Geiger and Natali.

On appeal from the New Jersey Civil Service
Commission, Docket No. 2019-1604.

Arthur J. Murray argued the cause for appellant Asia
Atkins (Alterman & Associates, LLC, attorneys; Stuart
J. Alterman, of counsel and on the brief; Arthur J.
Murray, on the brief).

Jana R. DiCosmo, Deputy Attorney General, argued the
cause for respondent New Jersey Department of
Corrections (Gurbir S. Grewal, Attorney General,
attorney; Jane C. Schuster, Assistant Attorney General,
of counsel; Jana R. DiCosmo, on the brief).

Gurbir S. Grewal, Attorney General, attorney for
respondent Civil Service Commission (Craig S. Keiser,
Deputy Attorney General, on the statement in lieu of
brief).

PER CURIAM

Appellant Asia Atkins appeals from a January 2, 2019 Civil Service Commission (CSC) final administrative decision dismissing her as a senior correctional police officer with the New Jersey Department of Corrections (DOC) after an investigation determined that she violated numerous DOC policies including conduct unbecoming a public employee and undue familiarity with a parolee, Haashim Johnson. We affirm.

I.

The evidence presented before the Office of Administrative Law (OAL) established the following facts. In January 2004, appellant was hired by DOC as a corrections officer at the New Jersey State Prison (NJSP) in Trenton. Johnson, who appellant described as her "godbrother," had been incarcerated since July 2, 2003 and was assigned to South Woods State Prison in Bridgeton at that time. On February 9, 2004, appellant wrote a letter to the Administrator at NJSP seeking "permission to continue correspondence via letters and phone calls with [Johnson]." Johnson was later incarcerated at the NJSP in Trenton from January 9, 2007 to June 21, 2007, where appellant served as a correctional officer.

A-2346-18T3

On June 14, 2011, according to an incident report, an inmate "started [a] fire and assaulted officers," injuring appellant's "neck, back, left knee/shin, left shoulder, . . . and right foot."  As a result of that event, appellant did not return to work until July 29, 2013, receiving workers' compensation benefits throughout that period.  Two years later, on July 5, 2015, appellant filed a report stating that she was "struck in the [left] arm by [a] light fixture that was on top of [a] file cabinet," and that her left hand and forearm were injured.  In its incident report, the DOC stated that "[t]he light fell from the cabinet striking her in the left forearm[,] causing swelling," and that following a medical examination, appellant would be "out of work until [July 9, 2015] due to a contusion to the left forearm."  Appellant, however, never returned to work and again received workers' compensation benefits.

Two months later, on September 29, 2015, appellant filed an Application for Accidental Disability Retirement with the New Jersey Division of Pensions and Benefits (NJDPB), seeking an effective retirement date of October 1, 2015.  In support of her application, appellant cited the June 14, 2011 event and noted that as a result of her injuries stemming from that incident, she had "been taking narcotics for [four] years, as well as other medications dealing with the pain in [an] effort to return to work and maintain a normal lifestyle," and that her

"physical . . . [and] mental being have been impaired and have severely impacted [her] work performance."[1]  She also stated she was "in fear of [her] safety as well as [her] coworkers' and no longer can perform [her] duties as an officer."

In a certification contained in the administrative record, appellant stated that in November 2015, she began dating Johnson, who had been released on parole earlier that year.  Appellant married Johnson in March 2016, while he was still under parole supervision.

On October 20, 2016, the NJDPB issued a letter to appellant denying her application for disability retirement benefits.  In support of its decision, the NJDPB stated that appellant was not "totally and permanently disabled either mentally or physically from the performance of [her] regular and assigned duties" based on the June 14, 2011 and July 5, 2015 incidents.  Appellant filed an appeal with the OAL of the NJDPB's decision.

In May 2017, Johnson was re-incarcerated for a parole violation.  Shortly thereafter, appellant transferred money to Johnson's JPAY account[2] using her name.  She also sent various e-mails to him while he was incarcerated, including

---

[1] In her disability retirement application, appellant also complained of a left arm injury and it appears that the NJDPB considered both the June 14, 2011 and July 5, 2015 incidents in reaching its decision.

[2] JPAY is a service that allows individuals to transfer money to inmates.

A-2346-18T3

pictures of the two together and a graphic that said, "Happy Anniversary." Appellant certified that at this point, "Johnson contacted [her] to tell [her] he had been questioned by the [DOC] Internal Affairs Unit as to [their] relationship," and that this contact was her initial notice that she was still considered by the DOC as an employee. When appellant was ordered by the DOC to report to the Internal Affairs Unit for an interview regarding the investigation, she chose not to attend.

On July 24, 2017, after an investigation by the DOC's Special Investigations Division, the DOC served appellant with a Preliminary Notice of Disciplinary Action charging her with: insubordination, N.J.A.C. 4A:2-2.3(a)(2); conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); conviction of a crime,[3] N.J.A.C. 4A:2-2.3(a)(5); personal conduct, Human Resources Bulletin (HRB) 84-17(C); conviction of a crime, HRB 84-17(C9); intentional disobedience of refusal to accept an order, HRB 84-17(C); conduct unbecoming an employee, HRB 84-17(C11); conviction of an offense involving dishonesty or of a crime in the third-degree or above, or an office involving or

---

[3] This offense appears to involve appellant's guilty plea to violating N.J.S.A. 2C:21-34B related to her submitting a forged letter to the New Jersey Motor Vehicle Commission. According to the DOC, appellant failed to report either the charge or her guilty plea.

touching her officer, position of employment, HRB 84-17 (C18); safety and security precautions, HRB 84-17(D); improper or unauthorized contact with an inmate – undue familiarity with inmates, parolees, their families or friends, HRB 84-17(D); violations of administrative procedures and/or regulations involving safety and security, HRB 84-17(D7); general, HRB 84-17(E); and violation of a rule, HRB 84-17(E1).

After issuing the preliminary notice, the DOC held a pre-termination hearing and a disciplinary appeal hearing.[4] A hearing officer found that by a preponderance of the evidence, the DOC established that appellant was insubordinate, engaged in conduct unbecoming an employee, had "[i]mproper or unauthorized contact with an inmate – undue familiarity with inmates, parolees, their families, or friends," violated safety and security procedures and regulations, and violated DOC rules. The hearing officer further determined that "the actions of the [a]ppellant in this matter were so egregious they reached the level of zero tolerance," and ordered the sanction of removal, effective

---

[4] Notice was sent by certified mail informing appellant of a pre-termination hearing on August 18, 2017. The day prior to the hearing, appellant sent a letter of resignation to the DOC, which it rejected based on appellant's "pending disciplinary charges."

September 6, 2017. Following the hearing, the DOC served appellant with a final notice of disciplinary action.

Appellant appealed the DOC's August 18, 2017 agency decision with the OAL. In January 2018, the DOC filed a motion for summary decision regarding the charge of conduct unbecoming a public employee. In support of its motion, the DOC argued that appellant violated its "undue familiarity policy," which prohibited DOC staff members from "[e]stablish[ing] a personal . . . relationship with an inmate under the supervision of the NJDOC," including those "on parole status, within one year of the completion or vacating of all court imposed sentences . . . ."

In response, appellant contended that contested issues of fact required a hearing on the motion. Specifically, appellant maintained that summary disposition was inappropriate because: 1) her appeal of the denial of her application for disability retirement benefits was still pending; 2) there was an issue of fact regarding whether "a marriage between an inactive employee and a parolee" constituted undue familiarity; 3) an issue of fact existed as to whether appellant "attempted to hide her marriage from the [DOC] after . . . Johnson's re-incarceration"; and 4) she reasonably believed she was no longer an employee of the DOC.

A-2346-18T3

In reply, the DOC argued that appellant remained an NJSP employee because "the submission of her disability retirement application did not sever her employment." Specifically, it maintained that the DOC retains employees "in non-pay status on the payroll while the employee awaits a decision" on such an application, and that appellant was on the payroll until September 6, 2017. Further, the DOC maintained that appellant clearly violated conduct rules regarding undue familiarity by marrying Johnson while he was on parole, and that she tried to hide the marriage from the DOC by failing to submit proper documentation.

On December 10, 2018, an Administrative Law Judge (ALJ) issued a written decision and order denying the DOC's motion for summary decision. In doing so, the ALJ found that there was "no evidence as to what, if any contact there was between appellant and . . . Johnson . . . when appellant first became a corrections officer and requested permission to maintain contact with him." The ALJ also found that "[t]here [was] no evidence as to any notice that appellant would have received from [the DOC] clarifying and/or explaining her employment status once she submitted her disability retirement application" and that any finding of whether appellant's conduct constituted "conduct

A-2346-18T3

unbecoming a public employee" would "require[] an evidentiary hearing where credibility can be assessed."

Regarding the sanction of removal, the ALJ determined that there had "been no evidence regarding progressive discipline previously imposed" and that the DOC undue familiarity policy "does not require removal for a first violation of the policy." For these reasons, the ALJ concluded that there was insufficient evidence "to properly dispose of this matter by way of summary decision" and scheduled an evidentiary hearing "to assess the credibility of any of the witnesses and weigh the testimony and evidence presented."

After granting the DOC's request for interlocutory review, the CSC issued a January 2, 2019 written decision and order that reversed the ALJ and granted summary decision to the DOC. The CSC found that it was undisputed that: appellant began dating Johnson around November 2015, while Johnson was on parole; "appellant sent [Johnson] romantic messages in May and June 2017, while he was still incarcerated"; and appellant "deposited funds into [Johnson]'s JPAY account on numerous occasions in May and June 2017." It further found that appellant did not report these activities to the DOC.

With respect to appellant's argument that she did not know she was still subject to DOC policies, the CSC found that her knowledge of her employment

9

status was not a material fact warranting denial of summary disposition. In this regard, the CSC determined that:

> the mere fact that the appellant applied for Accidental Disability Retirement did not mean that she was automatically approved[,] as the application was still subject to approval by the Board of Trustees. In fact, the Board of Trustees denied the appellant's application in this case in October 2016, and she was aware of the denial.

Based on that finding, the CSC determined that "appellant's assumption that she was no longer subject to departmental policies and procedures was not a reasonable one as her employment did not actually end until the effective date of her removal, September 6, 2017." It further stated that her "professed ignorance of her employment status is not a genuine issue of material fact," and that the undisputed facts in the record sufficed to support the DOC's charge.

Moreover, the CSC concluded that "the only appropriate penalty for the appellant's misconduct is removal." In reaching its conclusion, the CSC relied upon In re Ivette Arce, Dep't of Corr., Commission, Final Decision (September 6, 2017),[5] in which it held that the DOC "was justified in removing [that

---

[5] While we recognize that "an unpublished agency decision may have no precedential value for a court, the body of agency decisional authority is available to the entire regulated community and provides guidance to that community." In re Adamar of N.J., Inc., 401 N.J. Super. 247, 271 (App. Div.

A-2346-18T3

appellant] for having a personal relationship with an inmate" and that summary disposition was appropriate "because a personal relationship with an inmate is grounds for removal even if the relationship was not of a dating, physical[,] or sexual nature."

We affirm the CSC's decision, substantially for the reasons set forth in its January 2, 2019 final decision. We add only the following comments.

## II.

Our review of a final agency decision is limited, and we "do not ordinarily overturn such a decision 'in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence.'" In re Carter, 191 N.J. 474, 482 (2007) (citations omitted). Further, we may not substitute our judgment for that of the agency's when "substantial credible evidence supports [the] agency's conclusion . . . ." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992) (citations omitted). Instead, we "defer to an agency's expertise and superior knowledge of a particular field." Ibid. (citations omitted).

---

2008). We cite to this agency decision for the limited purpose of explaining the procedural history of the case before us. See Pressler and Verniero, Current N.J. Court Rules, cmt. 2 on R. 1:36-3 (2020) (defining the limited scenarios in which an appellate court may cite an unpublished decision, including for "case history").

Appellant first asserts that the CSC improperly granted summary decision to the DOC because a plenary hearing was required to determine the facts supporting a charge of "conduct unbecoming a public employee." Specifically, she contends the CSC "ignored the fact that [she] subjectively believed she was a former employee of the DOC after July 5, 2015," that it disregarded the DOC's lack of proofs as to whether it required appellant to acknowledge receipt of policies it put in place after July 5, 2015, and that it ignored the fact that she did not know her precise employment status upon applying for disability retirement benefits. We disagree.

A summary decision "may be rendered if the papers and discovery which have been filed, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law." N.J.A.C. 1:1-12.5(b). This standard is similar to the rule governing a motion for summary judgment. See R. 4:46-2(c).

Initially, we conclude that the CSC's decision to remove appellant from employment with the DOC was neither arbitrary nor capricious. Article III, Section 4 of the DOC Law Enforcement Personnel Rules and Regulations required appellant to "report all prior relationships with inmates or parolees in

12

writing to the Administrator or his or her designee" and Article III, Section 2 of the DOC Standards of Professional Conduct on Staff/Inmate Over Familiarity reaffirms that "[u]nder no circumstances may a staff member contact or correspond with an inmate . . . without written permission from the . . . Administrator . . .[,] or a parolee . . . without written permission from the appropriate parole supervisor." These requirements are consistent with the need to preserve proper interactions between inmates and corrections officers, "who are required to maintain order and enforce discipline . . . ." Bowden v. Bayside State Prison, 268 N.J. Super. 301, 305-06 (App. Div. 1993).

Here, appellant was aware of the undue familiarity policy. Indeed, she wrote to the Administrator at NJSP on February 9, 2004 seeking "permission to continue correspondence via letters and phone calls with [Johnson]." Further, appellant indisputably engaged in an inappropriate relationship with Johnson and failed to report her relationship with him while he was on parole and, in fact, continued that relationship prior to her attempted resignation. Violating "rules barring relationships of familiarity . . . between correction[s] officers and inmates [constitutes] conduct which the system cannot safely tolerate." Id. at 306.

Appellant's argument that a reasonable senior corrections officer would not have known that by applying for disability retirement benefits, she would be "retained on payroll in a non-pay status" is meritless. That appellant allegedly believed that she was no longer subject to DOC rules and policies because she unilaterally decided not to return to work and filed a disability application were not material considerations for the DOC which precluded summary disposition. Appellant points to no statement or document from the DOC that would support her self-serving interpretation of her employment status.[6]

In fact, appellant's own actions contradict her current claims that it was unreasonable for her to be aware she remained a DOC employee. It is undisputed that she did not return to work for two years following her June 14, 2011 injury, and nothing in the record established that the DOC indicated she was not bound by rules and regulations while she collected workers'

---

[6] In support of her argument that it was reasonable for her to believe she was no longer employed at the DOC prior to commencing a relationship with Johnson, appellant relies on the fact that although certain DOC documents define the terms "staff," "staff member," "law enforcement personnel," "employee," and "officer," the term "retained on payroll in a non-payroll status" was not defined or included in those terms. Appellant's reliance on those defined terms is unavailing as there is nothing in those definitions that would reasonably suggest that appellant was no longer bound by DOC policies. Indeed, she had not resigned at the time of her application and her status was clearly that of an employee who requested disability retirement benefits.

A-2346-18T3

compensation benefits.  Likewise, appellant points to no such indication by the DOC after she left work following her July 5, 2015 injury and subsequent failure to return to work.  Finally, appellant did not resign from the DOC prior to commencing her relationship with Johnson, although she was clearly aware of the option, as she attempted to resign on August 17, 2017, the day before her disciplinary hearing.[7]

"Conduct unbecoming a public employee," N.J.A.C. 4A:2-2.3(a)(6), is an "elastic" phrase encompassing "any conduct which adversely affects . . . morale or efficiency . . . [or] which has a tendency to destroy public respect for [public] employees and confidence in the operation of [public] services."  Karins v. Atl. City, 152 N.J. 532, 554 (1998) (citations omitted).  Conduct that "has the tendency to destroy public respect for [public] employees and public confidence in the operation of" the public entity is intolerable.  Id. at 557.

Appellant's status as a corrections officer subjects her to a higher standard of conduct than ordinary public employees.  In re Phillips, 117 N.J. 567, 576-77 (1990).  This is because corrections officers represent "law and order to the citizenry and must present an image of personal integrity and dependability in

_____

[7]  We also note that in a recorded phone call with Johnson on June 21, 2017, "appellant admitted, 'I'm still an active employee.'"

A-2346-18T3

order to have the respect of the public." Carter, 191 N.J. at 485-86 (quoting

Twp. of Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965)).

The CSC correctly resolved the dispute by summary disposition as appellant failed to demonstrate a genuine issue of material fact regarding whether she engaged in undue familiarity. Indeed, as noted, the fact that appellant allegedly had no knowledge that she was still an employee was not material. As the CSC noted, "there is no evidence that the appellant separated from employment via resignation prior to the issuance of the disciplinary charges against her" months later. The evidence clearly establishes that appellant, an employee of the DOC, engaged in undue familiarity with Johnson while she was still employed and while she was aware that her retirement application was denied.[8]

---

[8] We similarly reject appellant's related argument that the summary decision was improper because the DOC used intent-based arguments which precluded summary decision. First, we review the CSC's final order, not the arguments made by the parties. Second, as noted, appellant's purported lack of knowledge regarding her employment status was not a material fact. The undisputed facts in evidence before the OAL and CSC indisputably established that appellant engaged in conduct unbecoming a public employee due to her undue familiarity with a parolee, Johnson, warranting the sanction of removal.

Finally, appellant contends that the sanction imposed is disproportionate to the charges. She further maintains terminating her employment would effectively prevent her "from ever having her pension application heard on the merits" simply because she failed to appreciate that she was still an active employee subject to the DOC familiarity policy and factual disputes existed regarding the penalty for a conduct unbecoming charge. We are not persuaded.

We review an agency's disciplinary sanction under a deferential standard and only modify a sanction "when necessary to bring the agency's action into conformity with its delegated authority." In re Herrmann, 192 N.J. 19, 28 (2007) (quoting In re Polk, 90 N.J. 550, 578 (1982)). A reviewing court "has no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency." Ibid. (quoting Polk, 90 N.J. at 578). When reviewing an agency's disciplinary action, we consider "whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Id. at 28-29 (quoting Polk, 90 N.J. at 578).

The CSC determined that the "penalty of removal for the misconduct at issue [was] appropriate where the underlying nature of the relationship is surreptitious, compromising, or illicit, even where the employee does not

17                                                           A-2346-18T3

possess a prior disciplinary record." That finding is amply supported by the record and under the circumstances the sanction of removal is not "shocking to one's sense of fairness." See Herrmann, 192 N.J. at 28-29.

As noted, appellant was aware of the undue familiarity policy regarding personal relationships between corrections officers and inmates or parolees. She nevertheless engaged in a relationship with Johnson shortly after applying for disability retirement benefits without any regard for whether her application was granted and prior to formally resigning. As our Supreme Court stated in Herrmann:

> [J]udicial decisions have recognized that progressive discipline is not a necessary consideration when reviewing an agency head's choice of penalty when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest.
>
> [Herrmann, 192 N.J. at 33.]

As the CSC correctly concluded, appellant's conduct warranted the sanction of removal and was not disproportionate to the charges. No material and genuine factual issues existed in the record precluding such discipline. We likewise find no support for appellant's claim that the CSC was precluded from dismissing appellant because she was appealing the denial of her accidental

disability claim. Appellant's argument is unsupported by any relevant legal authority and is of insufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E). We simply note that the CSC was fully within its authority to take the action it did considering the serious misconduct established in the record and it was not obligated to withhold discipline of a DOC correctional officer merely because appellant appealed the denial of her accidental disability retirement application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2346-18T3