**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3401-19

NEW JERSEY STATE POLICE,

 Petitioner-Respondent,

v.

TROOPER MEGAN HABINA,
#7870,

 Respondent-Appellant.

_____

  Argued October 21, 2021 – Decided December 2, 2021

  Before Judges Alvarez and Haas.

  On appeal from the New Jersey Division of State
  Police, Docket Nos. 2016-0581 and 2017-0009.

  Claudia J. Gallagher argued the cause for appellant
  (Chance & McCann, LLC, attorneys; Kevin P.
  McCann, Claudia J. Gallagher and Matthew Weng, on
  the briefs).

  Jana R. DiCosmo, Deputy Attorney General, argued the
  cause for respondent (Andrew J. Bruck, Acting
  Attorney General, attorney; Sookie Bae-Park, Assistant
  Attorney General, of counsel; Alexis F. Fedorchak,
  Deputy Attorney General, on the brief).

PER CURIAM

Megan Habina appeals from a March 31, 2020 final agency decision of the Superintendent of the New Jersey Division of State Police terminating her employment as a state trooper. The Superintendent adopted the Administrative Law Judge (ALJ) John S. Kennedy's initial decision sustaining two out of three disciplinary charges against Habina, and recommending her termination. The Superintendent agreed that "in light of the gravity of [r]espondent's actions, the appropriate penalty . . . is termination . . . ." We affirm for the reasons stated by the Superintendent.

Sometime in October or November 2016, while on duty, Habina lost the alcohol influence report (AIR) necessary to complete the paperwork for a drunk driving arrest. She consulted with Trooper Casey McPartlin, who suggested she contact the Alcohol and Drug Testing Unit (ADTU) to retrieve a copy. Instead, Habina used another unrelated AIR to create a replacement AIR and signed McPartlin's name to it without his knowledge or consent. Habina admitted her actions, but insisted no harm was done because she used a report with the same blood alcohol percentage and changed no substantive information. She feared the repercussions of losing the AIR. As a result, she was served with three charges: acting or behaving in an official capacity to the personal discredit of

2

the member or the Division (a violation of Article 6, § 2.A, of the Rules and Regulations of the Division); making a false or misleading official report, or knowingly entering into Division books or records inaccurate, false, or misleading information (a violation of Article 5, § 16, of the Rules and Regulations of the Division); and performing her job responsibilities in a "culpably inefficient manner" (a violation of Article 5, § 5, of the Rules and Regulations of the Division).

On a separate occasion, Habina wrote a burglary investigation report alleging K.G. was a suspect because Habina had compared his driver's license picture to a surveillance video. K.G. did not have a New Jersey driver's license. Furthermore, Habina provided the address of an acquaintance of the suspect, falsely claiming it was "obtained through a Division database," when that simply was not true. The Division learned of this false report when K.G. complained that these inaccuracies had "contributed to his arrest and incarceration."

When interviewed about the false report in the company of a union representative, Habina said that she was uncertain whether she found K.G.'s license, but asserted that she utilized the license of K.G.'s similar-looking son. Habina's report also inaccurately listed dates that other troopers assisted her with the case, which they could not corroborate. She admitted her report "was not

3

factual." As a result of this false report, Habina was served with the same charges as in the AIR matter.

The Superintendent noted in the agency decision that police officers are public servants held to a high standard. Furthermore, trooper discipline is within the agency's managerial prerogative due to the importance of maintaining discipline among the state police.

The Superintendent did not credit Habina's attack on the Internal Affairs interview regarding the burglary report. Her expert testified at the administrative law hearing that she was unfairly questioned. The Superintendent found no merit to this argument, because among other reasons, Habina did not dispute the substance of the charges making the claim immaterial.

As the Superintendent explained, Habina

> intentionally and inappropriately altered a Division record in connection with an arrest, including signing the name of a [s]tate [t]rooper on the document without his consent or knowledge. Further, her investigation report of a burglary contains various inaccuracies, including the basis for the identification of the suspect. [Habina's] claims of lack of experience or fear of discipline do not excuse or lessen the severity of her misconduct and misjudgment. Further, her allegation of inadequate supervision, in an attempt to shift responsibility for her behavior to her supervisors, also lacks merit. [Habina's] misconduct violated the

4

standards of professionalism required of a [s]tate [t]rooper.

The Superintendent also quoted the ALJ, who in his decision stated that Habina had "broken the public trust" by so substantially deviating from the behavior expected of a law enforcement official.

Now on appeal, Habina raises the following points:

POINT I

THE STATE DID NOT PROVIDE PROOF THAT TROOPER HABINA ACKNOWLEDGED RECEIPT OR CLEARLY KNEW THE POLICIES AND PROCEDURES SHE WAS CHARGED WITH VIOLATING.

POINT II

THE COURT ERRED IN OVERLOOKING THE EVIDENCE THAT DET. SGT. RYON BARCLAY'S INTERVIEW WAS UNFAIR AND BIASED.

These arguments are so lacking in merit as to not warrant much discussion in a written opinion. R. 2:11-3(e)(1)(E). The Division need not prove that a trooper signed to acknowledge written guidelines in order to hold that trooper accountable for falsifying information. As the New Jersey Supreme Court has stated, it is a law enforcement official's primary duty to "enforce and uphold the law." In re Phillips, 117 N.J. 567, 576-77 (1990) (quoting Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965)). Habina should have

5

known falsifying the AIR report and signing another trooper's name without his knowledge or consent violated Division policies, even if she never received written standards to that effect.

The same is true with regard to the false burglary report. Even if we accepted Habina's expert's opinion for the sake of argument, which we do not, the internal investigations officer's credibility or "bullying" behavior is ultimately irrelevant. Habina falsified the suspect's identification—which may have caused his incarceration—and inaccurately recorded the involvement of other officers in the investigation. As the ALJ aptly pointed out, this conduct alone would have cast doubt on Habina's future investigations.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). We uphold an administrative agency's final decision unless clearly "arbitrary, capricious, or unreasonable, or . . . lack[ing] fair support in the record." Ibid. (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). We are "in no way bound by an agency's interpretation . . . of a strictly legal issue . . . ." Ibid. (quoting Mayflower Sec. Co. v. Bureau of Sec. in the Div. of Consumer Affs. of the Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973)). Thus, an agency's purely legal conclusions are

reviewed de novo. Ibid. In this case, we uphold the administrative agency's reasonable, factually supported, and legally sound final decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3401-19