774 A.2d 668

PORT AUTHORITY POLICE SERGEANTS BENEVOLENT ASSOCI-
ATION, INC., PLAINTIFF–RESPONDENT, v. THE PORT AU-
THORITY OF NEW YORK AND NEW JERSEY, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 7, 2001—Decided May 29, 2001.

Before Judges PETRELLA, NEWMAN and BRAITHWAITE.

*Donald F. Burke* argued the cause for appellant (*Hugh H. Welsh*, attorney and of counsel; *Mr. Burke*, on the brief).

*Marc N. Isenberg* argued the cause for respondent.

The opinion of the court was delivered by

NEWMAN, J.A.D.

Defendant, the Port Authority of New York and New Jersey (PA), appeals from a judgment of the Chancery Division, confirming an arbitration award of back pay to William Behrens, a former sergeant of the Port Authority Police Division. We now reverse.

These are the relevant facts. On June 3, 1995, while off duty, Behrens was involved in a car accident with Richard Pinto on Route 9 in Middlesex County, New Jersey. Because Behrens allegedly brandished his weapon at Pinto, a warrant was issued for Behrens' arrest on November 1, 1995. That same day, the PA suspended Behrens without pay.

On February 21, 1996, Behrens was indicted by a Middlesex County Grand Jury. On June 9, 1996, prior to the institution of

departmental disciplinary proceedings and prior to the resolution of the criminal charges, Behrens voluntarily retired from the PA.

The criminal case against Behrens was tried in Middlesex County in January 1997. On January 9, 1997, the jury found Behrens not guilty of the criminal charges.

On February 6, 1997, Richard D. Williams of the PA responded to counsel for Behrens' "inquiry concerning the status of the outstanding disciplinary charges which were pending against William Behrens at the time he retired on June 9, 1996." Williams wrote that because Behrens "has voluntarily separated from Port Authority employment via retirement, the charges which sought involuntary termination as a penalty, will not be pursued."

Shortly thereafter, on February 27 and April 1, 1997, plaintiff, Port Authority Police Sergeants Benevolent Association, Inc. (SBA), filed grievances against the PA on behalf of Behrens. Behrens sought, *inter alia*, full back pay from the date of his suspension on November 1, 1995 until the date of his retirement on June 9, 1996. The grievances ultimately proceeded to arbitration.

A March 8, 1993 collective bargaining agreement ("Memorandum of Agreement") between SBA and PA sets forth the terms and conditions of employment of SBA members with the PA. Appendix G of this agreement contains a "Grievance–Arbitration Procedure" that delineates the authority of an arbitrator to resolve disputes:

> (c) The arbitrator shall not have the power to add to, subtract from or modify the provisions of the Memorandum of Agreement and shall confine his decision solely to the interpretation and application of the Memorandum of Agreement. He shall confine himself to the precise issue presented for arbitration and shall have no authority to determine any other issues not so presented to him nor shall he submit observations or declarations of opinion which are not essential in reaching the determination.

> (d) The decision or award or relief afforded by the arbitrator shall be final and binding upon the Port Authority, the Association and the grievant or grievants to the extent permitted by and in accordance with applicable law and the Memorandum of Agreement.

Appendix G of the collective bargaining agreement also establishes procedures governing "Temporary Suspensions Without Pay:"

A. Any employee may be temporarily suspended without pay pending the preparation of charges and the completion of disciplinary proceedings (but not for more than two weeks without the approval of the Executive Director); and such temporary suspension shall not be deemed to constitute disciplinary action unless the charges are thereafter sustained.

B. If the charges are sustained and if as a result one or another of the following types of disciplinary action is taken, such disciplinary action shall be effective as of the day upon which the employee was suspended: dismissal; demotion; transfer; temporary reduction of pay; compulsory leave of absence without pay.

C. Except as provided above the employee shall be restored to duty upon the completion of the disciplinary proceedings, and shall then receive his full pay for the period during which he was temporarily suspended, whether or not the charges against him were sustained; provided, that the employee may be restored to duty prior to the completion of the disciplinary proceedings, in which event, he shall receive full pay for the period of his temporary suspension.

D. Nothing contained in this instruction shall be deemed to prevent suspending employees with pay, whether pending the preparation of charges and the completion of disciplinary proceedings or for other administrative purposes.

On September 25, 1999, the arbitrator issued an opinion and award, finding that Behrens was entitled to back pay from November 1, 1995, the date of his suspension without pay, until June 9, 1996, the date of his retirement. The arbitrator quoted a September 29, 1981 memorandum from John S. Giovanni of the PA to Police Association Presidents, wherein Giovanni explained:

A member of the Force may be suspended on a no-pay basis only when he is arrested or indicted by a Grand Jury. In all other situations when a member is suspended he will be on administrative suspension, with pay.

Those members suspended without pay, and administratively suspended with pay, are to be guided by the practices contained in the referenced PAI and PDIs.

Giovanni's statement that police could only be suspended without pay upon arrest or indictment is more restrictive than the applicable provision contained in Appendix G of the Memorandum of Agreement, which provides that "[a]ny employee may be temporarily suspended without pay pending the preparation of charges and the completion of disciplinary proceedings." The words "ar-

rest" or "indictment" are conspicuously absent from this section of the agreement.

The arbitrator found that Behrens' arrest was the basis for his suspension without pay. The PA evidently had until November 1, 1996, one year from the date of Behrens' arrest on November 1, 1995 when they first learned of the incident, to file disciplinary charges against Behrens. The arbitrator stated that Behrens retired on June 9, 1996, before any disciplinary charges were filed. While this assertion is contradicted by the February 6, 1997 letter from the PA's Richard D. Williams to counsel for Behrens, counsel for the PA represented to us that no disciplinary charges had been filed against Behrens prior to his retirement.

James Romito, the Port Authority's Chief Inspector of the Police Division of the Public Safety Department, certified that "[o]nce an employee retires from Port Authority employment, the Port Authority is without ability to proceed against the employee through disciplinary action." The PA understood that Behrens' retirement on June 9, 1996 foreclosed its ability to proceed with disciplinary charges against Behrens. As the arbitrator commented:

> The PA believes that by this action, Mr. Behrens ensured that he would not be subject to any further discipline and would be free of any charges currently pending against him. The PA also points to the retirement in arguing that, in electing to take that step, Mr. Behrens precluded himself from being returned to duty, an important prerequisite, it suggests, for the receipt of full pay.

Although the arbitrator was "suspicious that the Grievant elected to retire," she decided that because Behrens was subsequently acquitted of the criminal charges against him, he was entitled to back pay. The arbitrator explained that "[i]n this instance, it was only after Mr. Behrens had retired that it became apparent that the withholding of pay was 'improper.' "

In confirming the arbitration award, the Chancery Division judge decided that the arbitrator's contract interpretation was "reasonably debatable." In so concluding, the judge had this to say.

And the arbitrator's power in this case is not limited by any provision limiting its power to award backpay. It's not covered. It's not covered. The precise (sic) is not covered and I believe if you look at the agreement you can read it either way, so I'm satisfied with the appropriate standard. The award is to be confirmed.

■ Initially, SBA argues that PA's appeal should be dismissed due to PA's failure to serve SBA with its notice of appeal by March 31, 2000, forty-five days following the February 15, 2000 judgment. SBA maintains that it was not served until April 26, 2000. However, PA includes a certificate of service, signed by Nicole Forbes, certifying that she served the notice of appeal and CIS upon SBA's counsel, Marc N. Isenberg, by mail on March 20, 2000. This appeal was, therefore, timely. Even if the April 26 date were used, it would still be within the thirty day time period in which an extension of time may be granted, especially when the notice of appeal was filed within forty-five days of the judgment. *R.* 2:4–4(a).

■ On appeal, PA argues that the arbitration award must be vacated because the arbitrator exceeded her delineated authority in awarding back pay under the circumstances presented.

· *N.J.S.A.* 2A:24–8d provides that "[t]he court shall vacate the award ... [w]here the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." In *County Coll. of Morris Staff Ass'n v. County Coll. of Morris,* 100 *N.J.* 383, 495 *A.*2d 865 (1985), the Supreme Court instructed:

When parties have agreed, through a contract, on a defined set of rules that are to govern the arbitration process, an arbitrator exceeds his powers when he ignores the limited authority that the contract confers. The scope of an arbitrator's authority depends on the terms of the contract between the parties. Both the jurisdiction and the authority of the arbitrator are circumscribed by the powers delegated to him by the contract of the parties. Thus, an arbitrator may not disregard the terms of the parties' agreement, nor may he rewrite the contract for the parties.

[*Id.* at 391–92, 495 *A.*2d 865 (citations omitted).]

Similar to this case, *Comm. Workers of America, Local 1087 v. Monmouth County Bd. of Soc. Servs.,* 96 *N.J.* 442, 476 *A.*2d 777 (1984), involved a public sector collective bargaining agreement

that circumscribed the arbitrator's authority: "[t]he arbitrator shall not have the power to add to, subtract from, or modify the provisions of this Agreement and shall confine his ... decision solely to the interpretation and application of this Agreement." *Id.* at 449, 476 *A.*2d 777. The Court explained that this language "is typical of a narrow, as distinguished from a broad, arbitration clause." *Ibid.* (citing F. Elkouri & E. Elkouri, *How Arbitration Works* 65–66 (3d ed.1960)). The Court observed that "[u]nder such narrow arbitration clauses, disputes that do not involve rights traceable to the agreement are beyond the jurisdiction of the arbitrator and therefore are not properly arbitrable." *Id.* at 450, 476 *A.*2d 777 (citations omitted).

The agreement in *Comm. Workers, supra,* provided that the arbitrator may "prescribe an appropriate back pay remedy" only when there is a violation of the agreement, and "provided such remedy is permitted by law and is consistent with the terms of [the] Agreement, except that [he] may not make an award which exceeds the Welfare Board's authority." *Id.* at 451, 476 *A.*2d 777. The Court commented that "[t]his provision makes clear that the terms of the negotiated agreement and the dictates of the law set specific boundaries on the arbitrator's substantive authority to make back-pay awards." *Ibid.* In this regard, the Court emphasized that "[t]he terms of the negotiated agreement do not expressly provide for back pay for failure to promote." *Ibid.* Moreover, the Court found "no evidence that when the contract was made, the parties intended that back pay should be awarded for failure to place employees on a promotion eligibility list or for failure to promote." *Id.* at 452, 476 *A.*2d 777.

The Court concluded that "the arbitrator had no authority under the negotiated agreement to award back pay under these circumstances." *Ibid.* The arbitrator's award of back pay therefore exceeded her circumscribed jurisdiction "and amounted to an imperfectly executed award." *Id.* at 453, 476 *A.*2d 777 (citing *N.J.S.A.* 2A:24–8d).

So too here. The arbitrator's decision grafts an additional condition upon the parties' collective bargaining agreement: namely, that if an officer is indicted and subsequently acquitted of the criminal charges leveled against him, he is automatically entitled to back pay for the period of his suspension. Nowhere does the "Temporary Suspension Without Pay" section of the agreement provide for such an entitlement. Conversely, this section contemplates completion of departmental disciplinary proceedings, as opposed to a criminal prosecution. The "charges" and "disciplinary proceedings" referenced in this section are clearly departmental, as opposed to judicial, in nature. In fact, arrest or indictment-albeit an initial justification for suspension-does not factor into this analysis whatsoever.

██ Moreover, Behrens' acquittal of criminal charges where the State fails to satisfy a reasonable doubt standard does not mean the PA could not sustain disciplinary charges against him for violation of its Rules and Regulations where a lesser burden of proof is applicable. Put another way, acquittal of criminal charges cannot serve as a substitute for a favorable resolution of departmental disciplinary proceedings.

Because Behrens' decision to retire foreclosed the PA's ability to pursue disciplinary proceedings, the agreement's provisions governing temporary suspensions without pay, which explicitly require completion of disciplinary proceedings as the *sine qua non* of an employee's entitlement to back pay, were rendered inoperative. The arbitrator's decision, which in effect superimposed upon the parties' collective bargaining agreement a provision entitling a suspended employee to back pay once he is found not guilty of criminal charges, irrespective of the resolution of departmental proceedings, simply flew in the face of the following language of the agreement, which strips the arbitrator of:

> the power to add to, subtract from or modify the provisions of the Memorandum of Agreement and shall confine his decision solely to the interpretation and application of the Memorandum of Agreement.

The arbitrator exceeded her delineated authority by modifying the provisions of the collective bargaining agreement.

Our review of an arbitrator's decision is typically "limited to determining whether or not the [arbitrator's] interpretation of the contractual language is reasonably debatable." *Kearny PBA Local # 21 v. Town of Kearny,* 81 *N.J.* 208, 221, 405 *A.*2d 393 (1979). Here, because the parties' agreement contained no provision entitling a suspended employee to back pay based solely upon acquittal of criminal charges, and because Behrens's conduct ultimately precluded the resolution of the outstanding disciplinary charges pending against him, the arbitrator did not interpret the contractual language at all. Rather, the inescapable conclusion is that the arbitrator, in effect, inserted an additional contract provision to govern this precise situation, wherein acquittal of criminal charges would replace "completion of the disciplinary proceedings" as the prerequisite to entitlement to back pay. *See City Ass'n of Supervisors and Adm'rs. v. State Operated Sch. Dist. of City of Newark,* 311 *N.J.Super.* 300, 311–12, 709 *A.*2d 1328 (App.Div.1998) (finding that the arbitration panel, which had "no power to add to, delete from, or modify" the agreement's provisions, exceeded its authority by adding to the agreement the concept of past practices, thereby ignoring the clear and unambiguous language of the agreement concerning the manner in which vacation days were earned and reaching a different result than that bargained for by the parties).

We have explained that "[i]n addition to resolving a dispute according to the negotiated agreement, an arbitrator in a public employment case must consider the law and the public interest." *City Ass'n of Supervisors and Adm'rs., supra,* 311 *N.J.Super.* at 313, 709 *A.*2d 1328. The arbitrator failed to consider the ramifications of her decision on the public interest. Her decision basically encourages suspended police officers, who face both criminal and departmental charges, to remain on suspension for a protracted period of time while disciplinary charges are prepared. However, just before such charges are resolved, the officers can conveniently retire, safe in the knowledge that if they successfully defend against the pending criminal charges, they will reap a financial

windfall in the form of back pay from the date of their initial suspensions. By employing this strategy, they will have successfully undermined the department's ability to prosecute the disciplinary charges pending against them, and the department will have lost, by virtue of the voluntary retirement, the opportunity to eliminate any back pay award, one of the remedies available in the disciplinary forum. The public interest would thereby be subverted.

If a police officer is suspended without pay pending resolution of departmental charges, then he or she must allow the disciplinary proceeding to run its course in order to obtain an entitlement to back pay. Doubtless, this is the envisioned framework: it emanates directly from the language contained in the applicable provision of the parties' collective bargaining agreement, without having to add, subtract, or modify any of the terms of the agreement. As we have explained, "where an arbitration award does not draw its essence from the bargaining agreement it will not be enforced by the courts." *Belardinelli v. Werner Cont'l, Inc.*, 128 *N.J.Super.* 1, 7, 318 *A.*2d 777 (App.Div.1974).

Reversed and remanded for vacation of the arbitration award.