**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5208-15T4

SCOTT CHARD and ROBERT
COLLINS,

    Plaintiffs-Appellants,

v.

STATE OF NEW JERSEY and
DEPARTMENT OF CORRECTIONS,

    Defendants-Respondents.

_____

Argued November 13, 2017 — Decided July 24, 2018

Before Judges Ostrer and Whipple.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1281-15.

Frank M. Crivelli argued the cause for appellants (Crivelli & Barbati, LLC, attorneys; Frank M. Crivelli, on the brief).

Christopher W. Weber, Deputy Attorney General, argued the cause for respondents (Christopher S. Porrino, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Christopher W. Weber, on the brief).

PER CURIAM

An arbitrator rejected plaintiffs' grievances that they were denied the appropriate salary increases upon their promotion to sergeant in the Department of Corrections. The Law Division then confirmed the arbitrator's decision. Plaintiffs appeal, contending the arbitrator misinterpreted the law, and the trial court should have vacated his decision.

At the heart of the appeal is an apparent inconsistency between the promotional salary provision in the governing collective negotiations agreement (Agreement), and the Civil Service Commission regulation on promotional salary increases, specifically a subsection pertaining to employees like plaintiffs, who had been at the top of their pay range for thirty-nine pay periods or more. The arbitrator reasonably determined that interpreting the regulations fell outside the scope of arbitration authorized by the Agreement, and plaintiffs received the increase due under the Agreement. Therefore, the confirmation of the award was warranted unless plaintiffs could show that it was procured by undue means, or it would violate law or offend public policy. As we conclude plaintiffs failed to make that showing, we affirm.

I.

The Agreement followed an interest arbitration award between the State and plaintiffs' union, the New Jersey Law Enforcement Supervisors Association (NJLESA). Under the Agreement, an

employee promoted to a new job title must be placed on the lowest step of the appropriate salary guide that would still provide an increase of the old salary. Article 13(B)(3) states:

> Salary Upon Promotion: Effective as soon as practicable following issuance of the Interest Arbitration Award, any employee who is promoted to any job title represented by NJLESA shall receive a salary increase by receiving the amount necessary to place them on the appropriate salary guide . . . on the lowest Step that provides them with an increase in salary . . . .

The provision purported to supersede regulations that provided more generous promotional increases, by stating: "Notwithstanding any regulation or authority to the contrary, no employee shall receive any salary increase greater than the increase provided for above, upon promotion to any job title represented by NJLESA."

When the Agreement was adopted in 2009, the governing Civil Service regulations required more generous promotional salary increases. N.J.A.C. 4A:3-4.9(a) (2009) stated:

> (a) Employees who are appointed to a title with a higher class code shall receive a salary increase equal to at least one increment in the salary range of the former title plus the amount necessary to place them on the next higher step in the new range.

Moreover, the regulations authorized even more generous increases for employees who were essentially frozen at the top of their old

salary range for an extended period of time. N.J.A.C. 4A:3-4.9(c)
(2009) stated:

> (c) When an employee has been at the maximum
> of his or her previous salary range for at
> least 39 pay periods, and the salary increases
> after workweek adjustment would be less than
> two increments in the employee's previous
> range, the employee shall receive an
> additional increment in the new range,
> providing the employee is not already at the
> maximum of the new range.

Although both subsections (a) and (c) were at odds with the
Agreement, the Governor's Office of Employee Relations (OER) asked
the Commission only to relax subsection (a) to allow the Agreement
to control promotional salary increases. However, the
Commission's subsequent order was not so restricted, stating
"Therefore, it is ordered that these requests be granted <u>and future
promotional movements for the above listed titles be processed in
accordance with the terms of . . . the Interest Arbitration Award
between the State and NJLESA until June 30, 2011.</u>" (Emphasis
added).

As the Commission's order would expire at the end of June
2011, OER petitioned the Commission to amend its regulation to
allow continued implementation of the Agreement. According to the
Commission, OER "ask[ed] for an amendment to N.J.A.C. 4A:3-4.9
that would permit a different advancement pay adjustment than
provided in the rule if the pay adjustment is established by a

collective negotiations agreement." 43 N.J.R. 903(a) (Apr. 18, 2011). However, OER apparently suggested only an amendment to subsection (a). As the Commission stated, "To prevent the need for further rule relaxations in case of agreements similar to those described above, the petitioner suggested an amendment to N.J.A.C. 4A:3-4.9(a), allowing for the calculation of a different salary when 'a different promotional procedure is established by a collective negotiations agreement.'" Ibid.; see also 43 N.J.R. 747(b) (Mar. 21, 2011) (Notice of Action on Petition for Rulemaking). Consequently, the Commission revised only subsection (a), to state:

> Employees who are appointed to a title with a higher class code shall receive a salary increase equal to at least one increment in the salary range of the former title plus the amount necessary to place them on the next higher step in the new range, unless a different salary adjustment is established in a collective negotiations agreement . . . .
>
> [N.J.A.C. 4A:3-4.9(a) (2011) (emphasis added), adopted at 43 N.J.R. 2168(a) (Aug. 15, 2011).]

No change was made to subsection (c).

After the 2011 rule adoption, the Commission — at least in some cases — implemented the regulation to authorize promotional salary increases pursuant to subsection (c) for those employees who satisfied the subsection's requirements. In a March 2013

letter to the Commission, OER contended that was mistaken, as the
Agreement took precedence.

The Commission then reversed itself. It proposed another
amendment to N.J.A.C. 4A:3-4.9. 46 N.J.R. 473(a) (Mar. 17, 2014).
The Commission stated that its implementation of subsection (c)
had been "erroneous" and a "mistake." <u>Ibid.</u> This time, the
Commission proposed an amendment that expressly stated that a less
generous collective negotiations agreement would predominate over
both subsections (a) and (c) — which were redesignated as
subsections (b) and (d). <u>Ibid.</u> The Commission then adopted the
proposal. 46 N.J.R. 1815(a) (Aug. 18, 2014).

The new regulation states:

> (a) Unless a different salary adjustment is
> established in a collective negotiations
> agreement, the following provisions shall be
> applied when employees are appointed to a
> title with a higher class code, except that
> in no event shall such adjustment result in a
> higher salary than that provided for in this
> section.
>
> (b) Employees who are appointed to a title
> with a higher class code shall receive a
> salary increase equal to at least one
> increment in the salary range of the former
> title plus the amount necessary to place them
> on the next higher step in the new
> range. . . .
>
>       . . . .
>
> (d) When an employee has been at the maximum
> of his or her previous salary range for at

6

least 39 pay periods, and the salary increases after workweek adjustment would be less than two increments in the employee's previous range, the employee shall receive an additional increment in the new range, providing the employee is not already at the maximum of the new range.

[N.J.A.C. 4A:3-4.9 (2014).]

## II.

Against this regulatory backdrop, plaintiffs were promoted in 2012. The Agreement was still in effect, as it had been extended according to its terms after its original 2011 end date. Both plaintiffs had been at the "maximum of [their] . . . previous salary range for at least 39 pay periods . . . ." N.J.A.C. 4A:3-4.9(c) (2012). Before promotion, Chard and Collins were at the same salary range for at least forty-four and 120 weeks, respectively. Nonetheless, they received promotional pay raises under the Agreement, and not subsection (c). At stake was almost $3000 a year in added salary. They both filed grievances, which were unsuccessful at the initial stages. They then sought arbitration.

The arbitrator held that according to the plain language of the Agreement, plaintiffs received the appropriate increase. The arbitrator noted that plaintiffs met the prerequisites of subsection (c). However, the Agreement clearly stated it took precedence, providing that "[n]otwithstanding any regulation or

7

authority to the contrary, no employee shall receive any salary increase greater than the increase provided for above, upon promotion to any job title represented by NJLESA."

The arbitrator acknowledged, but declined to consider, plaintiffs' argument that N.J.A.C. 4A:3-4.9(c) superseded the Agreement's promotional salary increase provision; and that the first regulatory amendment applied only to subsection (a). The arbitrator relied upon the Agreement's provisions on arbitration.

The Agreement identifies two forms of grievances: a "contractual grievance" and a "non-contractual grievance." The former is "[a] claimed breach, misinterpretation or improper application of the terms of this Agreement" and the latter is "[a] claimed violation, misinterpretation or misapplication of rules or regulations, existing policies, letters or memoranda of agreement, administrative decisions, or laws applicable to the agency or department which employs the grievant affecting the terms and conditions of employment and which are not included [in the definition of contractual grievance]."

The Agreement provides for arbitration only of contractual grievances. "In the event that the grievance has not been satisfactorily resolved at Step Two, and the grievance involves an alleged violation of the Agreement as described in the definition in A.1 above [the definition of contractual grievance],

then a request for arbitration may be brought only by the Association . . . ." The Agreement expressly limited the arbitrator to interpreting the Agreement: "The arbitrator shall not have the power to add to, to subtract from, or modify the provisions of this Agreement or laws of the State, or any written policy of the State or sub-division thereof and <u>shall confine his decision solely to the interpretation and application of this Agreement</u>." (Emphasis added).

The arbitrator concluded, "Simply stated, I have no authority to decide the Association's claim that the State violated 'the mandates of the applicable version of N.J.A.C. 4A:3-4.9(c).'"

Plaintiffs followed with their complaint to vacate the arbitrator's decision. Defendants filed a counterclaim seeking confirmation. The parties then filed cross-motions for summary judgment. The trial judge held that the arbitrator's decision was reasonably debatable, and therefore should be confirmed, citing <u>Linden Board of Education v. Linden Education Association ex rel. Mizichko</u>, 202 N.J. 268 (2010). The court rejected plaintiffs' argument that the arbitrator issued the award through "undue means," <u>see</u> N.J.S.A. 2A:24-8(a), by mistakenly applying the regulations. The court noted the Agreement limited the scope of the arbitrator's authority.

On appeal, plaintiffs renew their argument that they were entitled to promotional salary increases pursuant to subsection (c), and not the Agreement's less generous provision. They argue the history of the Commission's administrative and regulatory responses to the Agreement reflect the intent to preserve the special salary increase for persons at the same pay range for thirty-nine pay periods or more, as subsection (c) provides. They argue that even the 2014 amendment was prospective, and did not affect their right to a salary increase under what is now subsection (d).

We review the trial court's summary judgment decision de novo, applying the same standard as the trial court. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). As there are no genuine issues of material fact, the question before us is a legal one. Ibid. Furthermore, "[a]s the decision to vacate an arbitration award is a decision of law, this court reviews the denial of a motion to vacate an arbitration award de novo." Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010).

We exercise limited review of the arbitrator's interpretation of the Agreement. A court may determine a question of substantive arbitrability — whether the grievance falls within the arbitration clause. Amalgamated Transit Union, Local 880 v. N.J. Transit Bus Operations, Inc., 200 N.J. 105, 115 (2009). However, the court

may not pass on the merits of the parties' dispute over the proper interpretation of their contract. Id. at 119. The court may not substitute its interpretation of the contract for the arbitrator's. Policemen's Benevolent Ass'n v. City of Trenton, 205 N.J. 422, 429 (2011).

"The well-established standard . . . is that 'an arbitrator's award will be confirmed so long as the award is reasonably debatable.'" Id. at 428-29 (quoting Linden Bd. of Educ., 202 N.J. at 276). This applies to an arbitrator's interpretation of a contract. Office of Emp. Relations v. Commc'ns Workers of Am., 154 N.J. 98, 112 (1998). "[O]ur courts have vacated arbitration awards as not reasonably debatable when arbitrators have, for example, added new terms to an agreement or ignored its clear language." Policemen's Benevolent Ass'n, 205 N.J. at 429. "[A]rbitrators may not look beyond the four corners of a contract to alter unambiguous language . . . ." Id. at 430.

The parties' agreement defines and limits the scope of an arbitrator's authority. See Port Auth. Police Sergeants Benevolent Ass'n of N.Y., N.J. v. Port Auth. of N.Y. and N.J., 340 N.J. Super. 453, 458-60 (App. Div. 2001) (describing limitation on arbitrator's authority as defined by public sector collective bargaining agreement); City Ass'n of Supervisors and Admin'rs v. State Operated School Dist. of Newark, 311 N.J. Super. 300, 310

(App. Div. 1998) (same). "If an arbitrator exceeds the scope of that authority, then his [or her] decision may be vacated on statutory grounds pursuant to N.J.S.A. 2A:24-8." City Ass'n of Supervisors and Admin'rs, 311 N.J. Super. at 310. In particular, "language limiting the arbitrator's authority to the resolution of grievances arising out of the terms of the agreement and denying him the authority to add to, subtract from, or modify its terms is typical of a narrow, as distinguished from a broad, arbitration clause." Commc'ns Workers of Am., Local 1087 v. Monmouth Cnty. Bd. of Social Servs., 96 N.J. 442, 449 (1984).

Of relevance to this case, a court may vacate an arbitrator's award that was procured by "undue means." N.J.S.A. 2A:24-8(a).[1] "The statutory phrase 'undue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record." Office of Emp. Relations, 154 N.J. at 111. An "acknowledged mistake" is one admitted by the arbitrator. N.J.

---

[1] This case does not implicate the other statutory grounds for vacatur: corruption and fraud, N.J.S.A. 2A:24-8(a); "evident partiality or corruption in the arbitrators," N.J.S.A. 2A:24-8(b); misconduct in scheduling the hearing, or receipt of evidence, N.J.S.A. 2A:24-8(c); or where the arbitrators "exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." N.J.S.A. 2A:24-8(d).

Highway Auth. v. Int'l Fed'n of Prof'l and Tech. Eng'rs, Local 193, 274 N.J. Super. 599, 609 (App. Div. 1994).

However, in public sector arbitration, the court exercises an additional level of review. "When reviewing an arbitrator's interpretation of a public-sector contract, in addition to determining whether the contract interpretation is reasonably debatable, the court must ascertain whether the award violates law or public policy." Office of Emp. Relations, 154 N.J. at 112; S. Plainfield Bd. of Educ. v. S. Plainfield Educ. Ass'n ex rel. English, 320 N.J. Super. 281, 288 (App. Div. 1999). An award violates law or offends public policy when it falls into a non-negotiable matter of governmental policy. Office of Emp. Relations, 154 N.J. at 113. "[A] subject is negotiable between public employers and employees when . . . the subject has not been fully or partially preempted by statute or regulation . . . ." Ibid. (quoting Local 195, IFPTE, AFL-CIO v. State, 88 N.J. 393, 404-05 (1982)). Thus, an award that is preempted by regulation violates law or public policy, and may not be confirmed. See ibid.

Applying these principles, we discern no basis to disturb the trial court's order confirming the arbitrator's award. First, the arbitrator adhered to the scope of his authority. The Agreement included a "narrow" arbitration clause. The arbitrator was

13

authorized only to address a contractual grievance. He was thus limited to the "four corners of the contract."

Plaintiffs do not genuinely dispute the arbitrator's interpretation of the Agreement's language. The plain language was not debatable. It granted plaintiffs a promotional salary increase that placed them on the lowest step possible in their new position, which still generated an increase over their previous salary. The Agreement required that result "notwithstanding any regulation . . . to the contrary" that might authorize a greater salary increase. In sum, it would be unreasonable to debate the correctness of the arbitrator's interpretation of the Agreement's terms.

The gist of plaintiffs' argument is that subsection (c) superseded the Agreement's plain language. However, we reject plaintiffs' contention that the arbitrator's decision was procured by "undue means." The arbitrator did not acknowledge a mistake of law or fact. Nor is a mistake evident on the face of the award. Rather, plaintiffs' claim of a legal error requires a detailed examination of the Commission's treatment of the Agreement, both by its initial order, and its two rounds of regulatory amendments.

Consequently, we must consider whether the arbitrator's award violates law — specifically the regulation's subsection (c). "The same rules of construction that apply to the interpretation of

statutes guide our interpretation of regulations." <u>Headen v. Jersey City Bd. of Educ.</u>, 212 N.J. 437, 451 (2012). We may resort to extrinsic materials if the language is ambiguous. <u>See</u> <u>In re Kollman</u>, 210 N.J. 557, 568 (2012) (stating that "[i]f the language of the statute is ambiguous, a court may resort to extrinsic evidence for guidance, including legislative history").

As a threshold matter, we conclude the plain meaning of the pre-2014 regulation is ambiguous. The 2011 rulemaking amended only subsection (a) with the language, "unless a different salary adjustment is established in a collective negotiations agreement . . . ." One may reasonably disagree over whether the "unless" clause was also intended to address persons at the maximum of their salary range for thirty-nine pay periods or more, as addressed in subsection (c). Therefore, it is appropriate to resort to extrinsic materials.

Upon our careful review of the regulatory record, we are persuaded that the Commission did not intend to preserve the enhanced promotional pay raises authorized by subsection (c), while removing those authorized by subsection (a). Despite the references to subsection (a), the operative language of the 2010 waiver order made clear that the Agreement was intended to supersede any regulation to the contrary that provided a more generous promotional salary increase. Nothing in the regulatory

record indicated an intention to treat differently persons who were at the maximum of their salary for an extended period of time.[2]

We recognize that the agency's implementation of the 2011 regulation is reflective of its own interpretation, which in turn is entitled to some weight.  However, the implementation was apparently inconsistent and short-lived.  See State, Dep't of Envtl. Prot. v. Stavola, 103 N.J. 425, 435 (1986) (suggesting that long-standing agency interpretation of a statute carries "greater force" than "its first application . . . to a new situation").  The Commission thereafter amended the regulation, conceding that it mistakenly and erroneously continued to apply subsection (c) in cases where a collective negotiations agreement provided for a less generous promotional salary increase.  The agency characterized the 2014 amendment as clarifying.

"Deference to an agency decision is particularly appropriate where interpretation of the Agency's own regulation is in issue." I.L. v. N.J. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006).  We

---

[2] We recognize that one might contend that persons frozen at the top of their salary range for such an extended period of time were entitled to a more generous promotional salary increase than those who were not.  However, there is no evidence in the regulatory history that the parties to the Agreement, or the Commission, intended to afford special treatment for such persons.

therefore conclude that the regulation, in its 2011 version as well as its 2014 version, was intended to elevate a collective negotiations agreement over the regulation, if the former was less generous than the latter. Consequently, the arbitrator's decision does not violate law or offend public policy.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION