**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5682-17T4

MICHAEL LALLEY,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted December 9, 2019 – Decided December 27, 2019

Before Judges Sumners and Geiger.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-66911.

Feeley & LaRocca, LLC, attorneys for appellant (Pablo N. Blanco, of counsel and on the brief; John Daniel Feeley, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jeffrey David Padgett, Deputy Attorney General, on the brief).

PER CURIAM

Michael Lalley appeals from a May 14, 2018 final decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS), which found that, due to misconduct, Lalley forfeited his entire pension service credit. We affirm.

I.

This appeal arises from the following facts. Lalley was hired as a police officer by the City of Newark Police Department in September 1990 and enrolled in the PFRS on October 1, 1990. He was assigned first to patrol and spent a major portion of his career in its Narcotics Division. He was subsequently promoted to Sergeant. During his tenure in the Narcotics Division, Lalley assisted the United States Drug Enforcement Administration with investigations at both the federal and state level.

In early 2010, Lalley was approached by agents of the Federal Bureau of Investigation (FBI), seeking his cooperation with an investigation of fellow members of the Newark Police Department. Lalley declined to cooperate in the investigation. Unbeknownst to Lalley, during the same time period, the FBI was also investigating Lalley's sexual relations with M.H., who was then seventeen

years old, and other minors in the mid-1990s. Lalley became aware that the FBI had spoken to M.H. and would contact him again.

In an interview on January 11, 2010, M.H. informed the FBI that Lalley had called him on January 4, 2010 and instructed him to "lie for [Lalley]." M.H. also stated that Lalley had paid him for sexual acts while M.H. was a minor and that their sexual relations went on for approximately two years at a frequency of one or two encounters per week.

On January 12, 2010, Lalley called M.H. During the conversation, which was consensually recorded, Lalley again instructed M.H. to lie to the FBI about their past sexual relationship. Lalley told M.H.: "They don't know nothing about me and you. But you gotta back that up if they ask do you—Did you ever have sex with me? No. Right?"

On January 19, 2010, Lalley called M.H. a third time and again instructed M.H. to conceal their prior sexual relations. The consensually recorded phone call included the following conversation:

> M.H.: And you're telling me to tell them I was [nineteen] but, like when I met you, I was [seventeen], bro. I can't lie to them.
>
> . . . .
>
> Lalley: [T]hey can't prove you're lying. You're not lying.

. . . .

> Lalley: I would say you—maybe you were [eighteen].
> . . . You was over [eighteen] though, you know?
>
> M.H.: I doubt it. . . . I was younger than that . . . when
> I got out of high school, I was [seventeen].
>
> Lalley: [B]ut . . . what I'm saying is, the thing is you
> gotta say you was over [eighteen].

On January 22, 2010, Lalley urged M.H. to meet with him in person to discuss M.H.'s statements to the FBI. He told M.H., "You gotta do this okay. I got kids, you got kids so. You know what I'm saying? We gotta meet!" Throughout the conversation, Lalley repeatedly stated that no sexual acts with M.H. occurred and that M.H. should tell the "truth" to the FBI.

On February 16, 2010, the FBI filed a criminal complaint against Lalley, charging him with obstruction of justice and witness tampering based upon his recorded statements to M.H. Lalley was subsequently indicted by a federal grand jury. In December 2010, Lalley entered into a plea agreement with the United States Attorney's Office.

On January 10, 2011, Lalley pleaded guilty to one count of obstruction of justice by attempting to tamper with a witness with intent to hinder, delay, and prevent the communication of information to a law enforcement officer relating to the commission of a federal offenses, in violation of 18 U.S.C. § 1512(b)(2),

4

(3) (2018). During the plea colloquy, Lalley made the following admissions as part of the factual basis for his plea:

> Mr. Gramicconi:[1] Mr. Lalley, from at least in or about January 2010 to the present, were you employed as a sergeant with the Newark Police Department?
>
> [Lalley]: Yes.
>
> Mr. Gramicconi: During that time were you aware that the [FBI] was conducting a federal investigation into criminal conduct allegedly committed by certain members of the Newark Police Department including yourself?
>
> [Lalley]: Yes.
>
> Mr. Gramicconi: Were you also aware that the investigation concerned among other things, allegations that you had sexual contacts with an individual identified by the initial M.H., who at the time was a minor, that is approximately [seventeen] years old?
>
> [Lalley]: Yes.
>
> Mr. Gramicconi: On the dates of January 12th, 19th, and 22nd, of 2010, . . . did you speak to M.H. several times regarding M.H.'s communications with the FBI?
>
> [Lalley]: Yes.
>
> . . . .

---

[1] Gramiccioni was one of the two Assistant U.S. Attorneys appearing for the Government.

Mr. Gramicconi: During these conversations did you attempt to persuade M.H. to conceal your past sexual relationship with M.H. by asking M.H. to tell the FBI that M.H. was over [eighteen] years old at the time?

[Lalley]: Yes.

Mr. Gramicconi: In doing so, did you intend to impede the FBI's investigation into the possible commission of federal offenses allegedly committed by you, based on your relationship with M.H.?

[Lalley]: Yes.

Mr. Gramicconi: Did you know what you were doing was against the law?

[Lalley]: Yes.

On the same day he pleaded guilty, Lalley received notice of disciplinary action based upon: conviction of a crime, N.J.A.C. 4A:2-2.3(a)(5); conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); and neglect of duty, N.J.A.C. 4A:2-2.3(a)(7). He was terminated from employment by the Newark Police Department effective January 10, 2011.[2]

During the subsequent sentencing hearing before Judge Peter G. Sheridan, Lalley stated he took "full responsibility for [his] actions in trying to conceal an embarrassing period in [his] life." He stated he "would like to apologize to the

---

[2] There is no indication in the record that Lalley contested his termination.

men and women of the Newark Police Department, on which [he] brought shame and dishonor, in a department which [he] was proud to serve for [twenty] years."

Judge Sheridan took in account Lalley's position as a police officer when rendering his sentence:

> [O]bstruction of justice, especially by a police officer, is a very substantial and heinous crime. In the court system we rely upon the truthfulness and the work of the police officers every day, and their work is essential to the judiciary being able to proceed on cases, and to keep and maintain justice in our society.
>
> So, for a police officer to hinder a prosecution or an investigation in a way that Mr. Lalley has, is a substantial disruption. And when he talks about embarrassment, . . . he embarrassed the entire police force by obstructing justice in this case.
>
> . . . .
>
> So, for [ten] or [twelve] days, Mr. Lalley was attempting to influence and hinder the federal investigation of the Newark police force as it applied to him. To me that's a very substantial offense. And despite [defense counsel's plea], that crime deserves punishment and that punishment must be served in prison.
>
> . . . .
>
> But in this case where the police officer obstructs justice, that's a betrayal of the faith and trust that we give our police officers every day.

Judge Sheridan sentenced Lalley to a sixteen-month prison term followed by three years of supervised release.[3]

While the criminal charges were pending, Lalley applied for a service retirement with twenty years of credit. On June 10, 2013, the Board determined that, based on its consideration of the factors enumerated in N.J.S.A. 43:1-3, Lalley's entire PFRS service and salary credit should be forfeited due to his "dishonorable service." The Board found that total forfeiture was appropriate due to: the nature of the misconduct or crime, including the gravity or substantiality of the offense (factor seven); the "[d]irect relationship between" the misconduct and Mr. Lalley's "public duties as a law enforcement officer" (factor eight); and his "[h]igh degree of moral turpitude" (factor nine). The Board concluded that:

> starting from 1991 through at least 1999, Mr. Lalley had engaged in sexually explicit acts with minors ranging in ages eight to [seventeen]. In 2010, Mr. Lalley tried to conceal his illegal conduct by instructing his former victims to lie to the FBI regarding their previous sexual relationship. Mr. Lalley attempted to corruptly persuade his victim to conceal his past sexual relationships from the FBI with intent to hinder, delay and prevent the communication with the FBI which is considered a federal offense.

---

[3] We find no indication that Lalley appealed his federal conviction or sentence.

A-5682-17T4

As a law enforcement officer, Mr. Lalley violated the public trust by his actions. He also corrupted the lives of minors with his flagrant disregard for the laws that he was sworn to uphold. . . .

Mr. Lalley was enrolled in the PFRS on October 1, 1990, and the criminal misconduct commenced in 1991 (a few months after he became a law enforcement officer). Mr. Lalley engaged in this misconduct for nearly his entire career as a police officer/sergeant for the City of Newark. Consequently, the Board found Mr. Lalley's criminal misconduct to be highly egregious and an extraordinary degree of moral turpitude.

Lalley appealed and the Board referred the matter to the Office of Administrative Law for a hearing before an Administrative Law Judge (ALJ). Lalley was the only witness at the hearing. In addition to certain facts that were stipulated, the balance of the record consisted of exhibits placed in evidence.

The ALJ found that, "[b]ased on Lalley's admitted conversations with M.H., his admissions during his plea allocution, as well as [Judge] Sheridan's determination that M.H. was seventeen when the sexual contact occurred, . . . Lalley had sexual contact with a seventeen-year-old minor." The ALJ further found that the sexual contact between Lalley and M.H. "occurred no earlier than 1994" "while Lalley was employed as a police officer." The ALJ concluded there was no competent evidence in the record to prove "that the sexual contact occurred during [Lalley's] exercise of duties as a police officer."

9

The ALJ further found that Lalley "obstructed justice to avoid criminal charges" "over a period of two months in 2010."

The ALJ concluded that the first six Uricoli[4] factors were not in dispute. Lalley served as a police officer for twenty years; his pension was vested. He "was dismissed from the force after he pled guilty to the federal charge." Similarly, factors ten and eleven were not in dispute. Thus, factors seven, eight, and nine were critical to determining whether pension forfeiture should be partial or total.

As to factor seven (nature of the misconduct or crime, including the gravity of the offense), the ALJ found that "[o]bstruction of justice and sexual contact with a minor are grave offenses. Obstruction of justice is entirely contrary to the reliance placed on police officers to be truthful and uphold the integrity of police work. Likewise, sexual acts with a minor are acts of substantial moral turpitude."

As to factor eight (relationship between the misconduct and the member's public duties), the ALJ found no residuum of competent evidence to prove Lalley's misconduct involved "his official duties as a police officer although it occurred during his tenure as a police officer." Nevertheless, "[t]o the extent .

---

[4] Uricoli v. Bd. of Trs., Police & Firemen's Ret. Sys., 91 N.J. 62, 77-78 (1982).

A-5682-17T4

. . that cooperation and truthfulness in the conduct of a federal investigation is part of a police officer's duties, his obstruction of justice does impact on those responsibilities."

Finally, as to factor nine (quality of moral turpitude or degree of culpability, including motives), the ALJ found that "[o]bstruction of justice to conceal a relationship with a seventeen-year-old [minor] is misconduct demonstrating substantial moral turpitude. Lalley was motivated to avoid criminal charges for himself as well as to avoid embarrassment for himself and his family. In doing so he betrayed the public trust."

The ALJ concluded total forfeiture was appropriate because Lalley's "egregious" misconduct were "acts of moral turpitude and evince a betrayal of the high standard of conduct expected of police officers." The Board adopted the ALJ's Initial Decision affirming total forfeiture of Lalley's PFRS membership service due to dishonorable service. This appeal followed.

Lalley raises a single point for our consideration:

> I. LALLEY IS ENTITLED TO THE PROCESSING OF HIS RETIREMENT APPLICATION BECAUSE THE PENALTY OF FORFEITURE WAS EXCESSIVE UNDER THE CIRCUMSTANCES SINCE THE MISCONDUCT WAS UNRELATED TO HIS OFFICIAL DUTIES AND TOOK PLACE AFTER OVER TWENTY YEARS OF HONORABLE SERVICE.

II.

The scope of our review in an appeal from a final decision of an administrative agency is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). The agency's decision should be upheld "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28). In light of the deference applied to such determinations, when an appellate court reviews administrative sanctions, "the test . . . is 'whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness.'" Herrmann, 192 N.J. at 28-29 (alteration in original) (quoting In re Polk, 90 N.J. 550, 578 (1982)). Thus, while an appellate court must be vigilant about not substituting its own judgment for that of an agency, Polk, 90 N.J. at 578, if the record reveals that the sanction is so disproportionate to the offense committed, in light of all the circumstances, as to shock one's sense of fairness, the sanction need not be affirmed.

We are not, however, "bound by an agency's interpretation of a statute or its determination of a strictly legal issue." Russo, 206 N.J. at 27 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). "[W]e apply de

12

novo review to an agency's interpretation of a statute or case law." Ibid. (citing Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

## A.

A public employee must provide "honorable service" to receive pension or retirement benefits. N.J.S.A. 43:1-3(a) ("The receipt of a public pension or retirement benefit is . . . expressly conditioned upon the rendering of honorable service by a public officer or employee."); N.J.A.C. 17:1-6.1(a); see also Corvelli v. Bd. of Trs., Police & Firemen's Ret. Sys., 130 N.J. 539, 550 (1992) (noting all of New Jersey's public pension statutes have an implied requirement of honorable service, and forfeiture can be ordered for employees who violate that requirement). The Board is authorized to order forfeiture, in whole or in part, "for misconduct occurring during the member's public service which renders the member's service or part thereof dishonorable." N.J.S.A. 43:1-3(b); N.J.A.C. 17:1-6.1(a), (c). Ordinarily, to require forfeiture of that portion of a member's pension that accrued prior to the criminal activity, the Board must find that the misconduct was related to the member's service. Masse v. Bd. of Trs., Pub. Emps.' Ret. Sys., 87 N.J. 252, 263 (1981). Nevertheless, forfeiture is not limited to misconduct resulting in a criminal conviction. Corvelli, 130 N.J. at 552. Rather, "[t]he term 'honorable service' . . . is sufficiently generic to

13

encompass a broad range of misconduct bearing on the forfeiture decision, including but not limited to criminal conviction." Ibid.

The forfeiture of a public employee's pension is governed by the factors enumerated in Uricoli, 91 N.J. at 77-78, and subsequently codified in N.J.S.A. 43:1-3(c). The eleven factors are:

> (1) the member's length of service; (2) the basis for retirement; (3) the extent to which the member's pension has vested; (4) the duties of the particular member; (5) the member's public employment history and record covered under the retirement system; (6) any other public employment or service; (7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated; (8) the relationship between the misconduct and the member's public duties; (9) the quality of moral turpitude or the degree of guilt or culpability, including the member's motives and reasons, personal gain and similar considerations; (10) the availability and adequacy of other penal sanctions; and (11) other personal circumstances relating to the member which bear upon the justness of forfeiture.
>
> [N.J.S.A. 43:1-3(c).]

The factors "must be balanced and then weighed in terms of the goals to be achieved under the pension laws." Uricoli, 91 N.J. at 78. The Board may, however, attribute more weight to factors seven, eight, and nine, when

applicable. <u>Corvelli</u>, 130 N.J. at 552-53 (holding total pension forfeiture "was justified . . . by application of <u>Uricoli</u> factors seven, eight, and nine").

B.

The Legislature has spoken on the serious nature of witness tampering. In 2007, it enacted N.J.S.A. 43:1-3.1. Subsection (a) provides in pertinent part:

> A person who holds or has held any public office, position, or employment, . . . who is convicted of any crime set forth in subsection b. of this section, or of a substantially similar offense under the laws of another state or the United States which would have been such a crime under the laws of this State, which crime or offense involves or touches such office, position or employment, shall forfeit all of the pension or retirement benefit earned as a member of any State . . . pension fund or retirement system in which he participated at the time of the commission of the offense and which covered the office, position or employment involved in the offense. As used in this section, a crime or offense that "involves or touches such office, position or employment" means that the crime or offense was related directly to the person's performance in, or circumstances flowing from, the specific public office or employment held by the person.
>
> [N.J.S.A. 43:1-3.1(a).]

Tampering with witnesses, in violation of N.J.S.A. 2C:28-5, is one of the enumerated crimes to which subsection (a) applies. N.J.S.A. 43:1-3.1(b)(14).

15

Lalley was convicted of obstruction of justice through attempted witness tampering, 18 U.S.C. § 1512(b)(2) and (3). That federal offense is substantially similar to the crime of tampering with witnesses, N.J.S.A. 2C:28-5. The criminal conviction conclusively establishes his misconduct. Indeed, Lalley, who pleaded guilty, does not deny committing the offense.

Law enforcement officers are held to a higher standard of conduct than other public employees and are obliged to act in a reasonable manner. In re Phillips, 117 N.J. 567, 576-77 (1990). Law enforcement officers "must present an image of personal integrity and dependability in order to have the respect of the public." Twp. of Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965). "Every police officer has an inherent duty to obey the law" and serve with "good faith, honesty, and integrity." State v. Stevens, 203 N.J. Super. 59, 65-66 (Law Div. 1984) (quoting Driscoll v. Burlington Bridge Co., 8 N.J. 433, 474-76 (1952)). This higher standard of conduct applies to the behavior of law enforcement officers on or off-duty. Phillips, 117 N.J. at 577.

Despite his twenty-year career as a Newark police officer, Lalley was terminated from employment as a result of his witness tampering. He was federally prosecuted, pleaded guilty to obstruction of justice by attempting to

tamper with a witness, and was sentenced to federal prison followed by supervised release. By any measure, his misconduct was egregious.

Lalley's misconduct was also directly related to his employment as a Newark police officer. The FBI was investigating the Newark Police Department, of which Lalley was a member. The investigation encompassed Lalley's conduct of engaging in sexual relations with minors, including M.H. When Lalley learned the FBI would be interviewing M.H, he repeatedly attempted to tamper with M.H.'s statements to thwart the FBI's investigation.

The "primary duty" of police officers "is to enforce and uphold the law." Phillips, 117 N.J. at 576 (quoting Armstrong, 89 N.J. Super. at 566). Their honesty and credibility are central to their role as law enforcement officers. As recognized by Judge Sheridan, Lalley's conduct violated his oath of office, undermined his ability to perform his duties, and tarnished the reputation of the entire department. Moreover, his obstruction of justice was motivated by his attempt to conceal his sexual relations with minors that occurred early on in his career as a police officer. The victims of that conduct were children that Lalley was sworn to protect.

The ALJ's findings, which were adopted by the Board, are supported by sufficient credible evidence in the record. The ALJ carefully applied and

weighed the <u>Uricoli</u> factors. Considering the totality of the circumstances, total forfeiture of Lalley's pension credits was not arbitrary, capricious or unreasonable. It was not so disproportionate to the offense as to be shocking to our sense of fairness. Taking into account the serious nature of the misconduct and substantial moral turpitude involved, coupled with the fact that the witness tampering arose out of an unsuccessful attempt to conceal earlier misconduct that took place shortly after Lalley became a police officer, we discern no basis to overturn the Board's final decision. Moreover, the misconduct related to the performance of his duties as a police officer, and the high standards expected of police officers both on and off duty.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5682-17T4